No. 24-1907

_____

In the United States Court of Appeals for the First Circuit

_____

United States,

*Appellee,*

v.

Kevin Lee Ross,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the District of Maine

_____

Appellant's Brief and Request for Oral Argument

_____

William L. Welch, III
5305 Village Center Drive, Suite 142
Columbia, Maryland 21044
Telephone: (410) 615-7186
Facsimile: (410) 630-7760
wlw@wwelchattorney.com
Counsel for Appellant
(Appointed by this Court)

# Table of Contents

Table of Authorities.....................................................................IV

Glossary of Abbreviations .........................................................V

Reasons Why Oral Argument Should Be Heard .....................VI

Introduction.................................................................................1

Jurisdictional Statement............................................................1

Statement of the Issue Presented for Review...........................2

Statement of the Case ................................................................2

Summary Argument..................................................................29

Argument...................................................................................30

I. ADMITTING NINE IMAGES OF GRAPHIC CHILD SEXUAL ABUSE AND
KELLY'S NARRATION OF THEM DURING PUBLICATION TO THE JURY
VIOLATED RULE 403, BECAUSE EXHIBITS 33–35, 44–46 AND 50–52
WERE NOT PROBATIVE OF A FACT IN ISSUE, AND DOING SO
PREJUDICED ROSS BY INFLAMING JURORS' PASSIONS, DISTRACTING
THEM FROM "*THE QUESTION REALLY IS, DID THE DEFENDANT
KNOWINGLY POSSESS THIS MATERIAL?*" .........................................30

    A. Standard of Review.................................................................30

    B. Two Days before Ross' Jury Trial Began, the Government
Stipulated that Exhibits 33–35, 44–46 and 50–52 Are Images of
Child Pornography.................................................................30

    C. Ross Objected, but the District Court Misapplied the Law,
Publishing Three Unfairly Prejudicial Images of Graphic
Sexual Child Abuse.................................................................32

      1.      Three More ....................................................................... 35

      2.      And Three More............................................................. 36

      3.      Unfair Prejudice Amplified ........................................... 37

  D.    The District Court Should Have Considered Whether the Images Lacked Probative Value after Stipulation and Weighed That Against the Risk that Publishing Graphic Images of Sexual Child Abuse Would Unfairly Prejudice Ross. ............... 38

Conclusion ............................................................................. 39

Request for Oral Argument .................................................... 39

Certificate of Compliance ...................................................... 39

Certificate of Service ............................................................. 40

Table of Addendum Contents................................................ 442

# Table of Authorities

## Cases

*Old Chief v. United States,* 519 U.S. 172 (1997)......................................32

*United States v. Ross,* 837 F.3d 85 (2016)........................ 19, 30, 33, 34, 38

*United States v. Varoudakis,* 233 F.3d 113, 122 (1st Cir. 2000) ............38

## Statutes

18 U.S.C. § 2252A.......................................................................2

18 U.S.C. § 2256 ........................................................................2

18 U.S.C. § 3231 .......................................................................1

28 U.S.C. § 1291 .......................................................................1

## Other Authorities

Fed. R. App. P. 28.1(e)(2) .......................................................40

Fed. R. App. P. 32(f) ..............................................................40

Fed. R. App. P. 34(a) ..........................................................v, 39

F.R.E. 403.......................................... 2, 29, 30, 34, 35, 38, 39

*Pattern Jury Instructions for the District Courts of the First Circuit,*
    District of Maine, Section 2.01, Internet Site Edition (2/6/24) .....31, 32

# Glossary of Abbreviations

A.          Addendum

Doc.        Document in Case Management/Electronic Case Filing
            system MED 1:23-cr-00073-LEW-1

J.A.        Joint Appendix

## Reasons Why Oral Argument Should Be Heard

The Court should hear oral argument, because after briefing the Court might still have questions of the parties that would best be addressed through dialogue, and because Ross requests it. *See* Fed. R. App. P. 34(a); Loc. R. 34.0(a).

## Introduction

In a possession of child pornography case in which the government stipulated that the images were child pornography and said, "So the question really is, did the defendant knowingly possess this material?" the District Court found publication and narration of graphic images of child sexual abuse nine times was not unfairly prejudicial.

## Jurisdictional Statement

Jurisdiction arises from the final judgment in a criminal case, entered against Kevin Lee Ross on 10/04/2024 in the United States District Court for the District of Maine. A.26, A.34. Jurisdiction in the District Court was based on Title 18, United States Code, Section 3231, because the government prosecuted Ross for violating the United States Code.

Ross noted this appeal on 10/04/2024 (J.A.401), seeking the Court of Appeals' review of the District Court's final decision regarding conviction and sentencing. *See* 28 U.S.C. § 1291.

## Statement of the Issue Presented for Review

1.    Whether the District Court erred by finding publication and narration of nine exhibits and testimony regarding them on an element that the government had stipulated to be proven was not unfairly prejudicial?

## Rule Involved

Federal Rule of Evidence 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

A.42.

## Statement of the Case

By Indictment filed 07/19/2023 the Grand Jury charged Ross with possession of child pornography (18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2256(8)(A)(1)).  J.A.17.

The government moved *in limine* to introduce evidence about Ross' 2014 conviction for possessing child pornography, prison sentence, and supervised release conditions.  Doc. 62.  Ross objected that it is

irrelevant and unfairly prejudicial (Doc. 75), but the District Court granted the Motion.  A.1.

On 06/11/2024 the parties stipulated:

1) That Government Exhibits 33−35, 44−46 and 50−52 are images produced by using an actual person under the age of eighteen engaging in sexually explicit conduct.  These images of child pornography were produced using materials that have been mailed, shipped or transported in interstate or foreign commerce.

2) That the defendant was in federal custody from October 21, 2014 until April 8, 2021 as a result of his conviction of possession of child pornography in *United States v. Kevin Ross*, 1:13-CR-00158-LEW.

3) That Exhibits 6, 7, and 8 were obtained by the United States Probation Office from the residence of Kevin Ross, Michael Ross and Scott Ross in Penobscot, Maine on April 5, 2023. These exhibits were provided to Homeland Security Investigations Special Agent Greg Kelly for forensic examination in the same condition as the date they were obtained on April 5, 2023.

A.11−16.

### i) "So the Question Really Is, Did the Defendant Knowingly Possess This Material?" —A.U.S.A. McCormack J.A.345:17–18.

Ross' jury trial began two days after the government filed the Stipulations (J.A.10), and his defense was that he had been framed. J.A.41:16–33:13.

### ii) Fourteen Home Inspections over Fifteen Months Without Issue

Probation Officer Ashley Hadam supervised Ross and identified the charging documents and Judgment for the prior conviction (Exhibits 1 & 2). J.A.51:17–56:14. The government read Stipulation #2 about Ross' prior conviction of possession of child pornography (Exhibit 58) to the jury. J.A.57:13–58:8.

From 12/17/2021 to 03/16/2023, Hadam inspected Ross' residence fourteen times, looking for anything Ross was not supposed to have, and Ross did not have any banned electronics. J.A.71:4–91:21. Ross had software monitoring his phone, and there were no issues with Ross' use of the phone he was permitted. J.A.79:20–80:3.

Scott had a laptop and Wi-Fi, because during the pre-release investigation Probation confirmed what electronic devices were there, and that they were password protected.  J.A.85:19−86:9.

### iii)   *Trouble with Scott*

The Rosses were living at 17 Dales Lane, Penobscot, Maine until 02/04/2023 when a wood-stove fire in the basement spread throughout the house.  J.A.142:25−143:16.  They moved to a hotel in Ellsworth, but after a month of three adults sharing one room, they acquired a one bedroom, one bathroom cottage in Penobscot and kept looking for rentals.  J.A.143:18−144:1.  Eventually, the Rosses found a rental in Ellsworth on Gary Moore and started to move.  J.A.144:1−19.

In March 2023 Scott and Ross got in a dispute.  J.A.158:8−11.  The Rosses had started moving, and Scott stayed at the cabin, because there were days left on the lease.  J.A.158:12−16.  Mike and Ross came by, and Scott and Mike had words.  J.A.158:16−18, 201:19−202:1.  Scott walked away from Ross, and Ross did not follow Scott into his bedroom.  J.A.210:20−211:2.

Scott came back from his bedroom walked to Ross, pointed a boot gun at him, and said, "[G]et the eff out of the cabin. J.A.158:18–21, 179:15–180:7.

Ross left and called police, which surprised Scott, who felt Ross would not do so, because he is a convicted felon on parole. J.A.180:21–181:8.

State Police took Scott's firearm, and the prosecutor was supposed to let Scott know when he could pick it up, but Scott never got a response. J.A.181:19–25.

### iv)    Scott Calls Probation

On 03/31/2023, Scott called Hadam saying Ross had two cell phones. J.A.59:4–11.

Scott claimed he asked Hadam whether he could move to Ellsworth, because Ross was saying that they were not allowed to be in the same building, and Hadam told him that was not the case. J.A.145:2–17.

On 03/31/2023 Ross and Mike were living at the rental, and Scott planned to do so. J.A.144:20–25. Insurance was paying for the rental,

but Scott was paying for the cabin himself, and it needed to cease. J.A.145:17−19.

Scott brought up, if Ross was going to tell lies, they needed to know that he had multiple phones, but Scott did not bring up anything about the car at that time.  J.A.146:18−24.

### v) *Probation Alleges Violation and Arrests Ross*

Hadam, Bryce Turgeon, and Gian Zucchi went to Ross' residence on 04/05/2023, and Hadam informed Ross that officers were there to search.  J.A.63:20−64:12.

Hadam sat with Ross and his brother Mike, while other officers searched.  J.A.64:12−14.  Turgeon searched Ross' bedroom and bathroom and gave Hadam drug paraphernalia and a cell phone (Exhibit 6).  J.A.64:15−65:6.  Turgeon saw a cell phone inside a trash bag and found marijuana and drug paraphernalia in another bag. J.A.109:6−14.

When the phone was turned on, Hadam saw an image of a small child with her legs open and what appeared to be semen on her genitals. J.A.66:4−9. When Hadam asked Ross to whom the phone belonged, he

indicated that he had not seen it before. J.A.66:10–15. Ross admitted the drug paraphernalia was his. J.A.67:4–6.

Zucchi searched a Toyota in the driveway with keys that Ross provided. J.A.67:7–16. Zucchi gave Hadam a laptop bag, containing a Toshiba hard drive and Acer Aspire laptop from the Toyota (Exhibits 7 & 8). J.A.67:17–68:13. When Hadam asked Ross about the computer bag, he indicated that he had not seen it before. J.A.68:14–19.

At some point Scott asked if Hadam knew where Ross had parked the car, and where it could be retrieved. J.A.147:1–3. The 2006 Toyota Corolla with Maine license plate 345YD was registered and insured by Scott on 04/05/2023. J.A.147:4–9.

Ross acquired it from their mother's estate by paying Scott and Mike after he moved from the halfway house. J.A.147:10–13. Ross was supposed to get his own insurance and register it, but it was still in Scott's name because when their mother passed in 2020, Scott had registered and insured it. J.A.147:13–17. Scott was still paying the registration, insurance, taxes and maintenance, but Ross was the primary driver. J.A.147:17–20. Mike does not have a driver's license, but he might have driven the Toyota. J.A.149:3–5.

### vi) *Evidence about the Phone, Laptop, and Hard Drive*

Scott denied seeing Government's Exhibits 7 and 8 previously and claimed Mike is pretty much computer-illiterate. J.A.150:1–12.

Scott was aware they located a phone in Ross' bedroom, and Exhibit 6 appears to be it, because it and Mike's are slightly different than Scott's. J.A.150:19–151:11. The Rosses got phones together on a family plan from U.S. Cellular. Id.

Scott denied sleeping or storing anything in Ross' bedroom at Gary Moore Road until after Ross left, when Scott packed Ross' stuff and moved in. J.A.151:24–152:7.

Scott denied downloading child pornography onto the laptop and hard drive he was shown earlier, claiming he did not know the laptop existed. J.A.192:3–13.

Scott denied using Ross' smartphone, downloading child pornography, searching for it, or pretending to be Ross. J.A.193:4–14.

Scott claimed he did not know how to access Ross' phone remotely to upload child pornography or pretend he was Ross. J.A.193:15–22.

Mike denied using the phone Probation took from Ross' bedroom, searching for child pornography on Ross' phone and knowing how to remotely access it. J.A.197:21−198:7. Mike denied ever seeing Exhibit 7, the computer bag, or a computer inside it. J.A.199:1−17.

Mike denied knowing if anybody possessed a laptop computer that was in the car and what an external hard drive is, claiming he has no computer abilities and can barely use his cell phone. J.A.199:18−200:3.

Mike denied using the computer to search for child pornography, remotely accessing it to search for child pornography, or remotely accessing it to pose as Ross. J.A.200:4−16.

Mike denied knowing how to use the external hard drive that is Government Exhibit 8, downloading any child pornography on it, or remotely accessing it. J.A.200:17−201:4.

Mike denied owning a laptop, sleeping in Ross' room, leaving possessions there, or putting a cell phone in there. J.A.201:5−18.

Ross has an interest in motorcycles and owns a Harley that he bought after he got out of prison. J.A.202:7−17.

Ross likes to garden and grow things, mostly vegetables and some flowers.  J.A.202:18−23.

Exhibits 54, 55, and 56 are what guests sign when they check-in including registration information and copies of their identification.  J.A.216:6−12.  The check-in date is 3/23/23, and the check-out date is 3/24/23.  J.A.217:11−13.  The vehicle is a Corolla with license plate 345YD.  J.A.217:14−20.  Ross' license was provided.  J.A.218:2−5.

Exhibit 55 is a reservation with the check-in on 02/28/23 and check-out on 03/01/23, phone number 479-5684, email 123leeross@gmail.com, Corolla with license plate 345YD, and the last page is the renter's license of the person who is renting the room.  J.A.218:6−219:1.

Greg Kelly examined the phone, laptop, and external hard drive (Exhibits 6, 7, and 8).  J.A.221:13−226:17.

The government read Stipulation #3 about Exhibits 6, 7, and 8 being obtained by Probation from the Rosses' residence on 04/05/2023 and provided to Kelly in the same condition as they were obtained.  J.A.226:21−227:9.

Exhibit 6, the cell phone, has over 500 files of child sexual abuse material (CSAM) or child sexual exploitative material, consisting mainly of sexual abuse and/or exploitation of prepubescent girls. J.A.231:22–232:6. Somebody had actively searched or used the internet to search for CSAM that was on the device, which Kelly associated with Ross. T.06/13/2024 232:8–12.

Exhibit 15 is several pages of selfie-style photographs of Ross on the phone, many the same, but different sizes. J.A.234:8–19.

Exhibit 16 is the Brave browser autofill used to access the internet. J.A.238:4–10. On 10/08/2022, email 123leeross@gmail.com was entered, and Brave was making it easier the next time that 123leeross got entered. J.A.238:21–239:3. On 08/24/2022, the search "Preteen pussy" was entered by the phone's user. J.A.239:4–9. On 08/26/2022 the Brave browser is remembering PTHC that has been entered previously probably for a search. J.A.239:16–23. PTHC means preteen/hard core to Kelly, and it is arguably the most popular term used to search for images and videos of child pornography. J.A.239:24–240:5.

Exhibit 17 is search terms saved by the phone Brave browser. J.A.240:6–11. Terms used included "18 and tiny[,]" "petite shaved teen porn[,]" and kinder porn, which in German means children. J.A.241:16–242:3. The dates for those search terms are from January until March 2023. J.A.242:7–10. On 01/02/2023 a bookmark for teen-preteen models/panties-Brave search for a long URL was added. J.A.244:5–13.

Exhibit 19 is the phone's Chrome browser. J.A.244:15–22. The name in this autofill profile done 04/20/2022 is Kevin Ross, and the telephone number is the one associated with the phone that Kelly analyzed. J.A.245:10–23. The address is 17 Dales Lane of Penobscot, Maine. J.A.245:24–246:1. An autofill profile date modified 04/15/2022 has all the same information and the email address 123leeross@gmail.com. J.A.246:14–19.

Exhibit 20 is autofill from the phone's Chrome browser with the first name and Lee created 01/15/2022 and last used 02/03/2022. J.A.248:3–25. The term "preteen blowjobs[]" was created and last accessed January 2022. J.A.249:20–25. Autofill with Kevin for the first, Ross for the last, and email 123leeross@gmail.com took place on

this phone 01/01/2022.  J.A.250:1−10.  Autofill with Kevin for the first name and Ross for the last name, created 03/03/2022 was last accessed 04/13/2022.  J.A.250:11−251:1.  Autofill with Kevin for the first name, Ross for the last name, the address is 17 Dales Lane in Penobscot, phone number, and created 04/25/2022 was last accessed 05/05/2022.  J.A.251:11−252:8.  These values were entered, because somebody has entered those values previously.  J.A.252:9−13.

Exhibit 21 is logins to different websites from the phone's Chrome browser.  J.A.252:19−13.  One of the user names is the telephone number of the phone, and many of the passwords are 8262LR, which is also Ross' birthday 08/02/1962.  J.A.252:24−253:16.  Variations were used as a password from 08/21/2022 to 01/02/2023.  J.A.254:10−15.  The creation dates span 01/16/2022 to 05/02/2022.  J.A.253:17−254:2.  Autofill with first name Kevin, last name Ross, and email 123leeross@gmail.com was entered into the Samsung browser 03/28/2023.  J.A.256:4−9.

Exhibit 24 is a list of CSAM filenames of pictures recovered from the phone.  J.A.256:10−18.

Kelly is uncertain why there is a last accessed date of 12/31/1979, but it is obviously a bad date, because cellular phones had not been invented then.  J.A.258:7–14.  12/31/1979 might be a remnant of the fat file system on the SD card where these files were found that uses epic dates, which are arbitrary and count time from an offset of that.  J.A.258:14–20.

Commonly computers use 01/01/1970, and depending on the time standard, count nanoseconds or milliseconds from that date to give today's date.  J.A.257:21–25.  The fat file system uses 01/01/1980, and Kelly assumed it is a remnant, but Kelly is uncertain why it says 1979.  J.A.258:1–4.  For government purposes the operative date is the last modified date, because the Android file system mostly does not track creation dates.  J.A.258:6–9.

Mostly, Kelly looked at the modified date for when something happened with an image on this computer.  J.A.258:9–13.

Every file listed is a child pornography image, and multiple images of child pornography were modified or accessed on this phone with last modified dates of 12/31/2022, 01/03/2023, 01/08/2023, 01/25/2023, and 03/30/2023.  J.A.258:17–259:20.

Exhibit 25 is CSAM files or filenames for videos that were recovered from the phone, and each is a different child pornography video with accessed and modified dates ranging from August 2022 until March 2023. J.A.260:6−18. The images and videos were not hidden and were easily accessible. J.A.260:9−261:1.

Exhibit 26 shows Amazon recognized this device as Kevin's Android, meaning somebody had configured it to function with Alexa, and the device name is Kevin's Android. J.A.261:6−16. Two CSAM images were from a site last visited 08/25/2022. J.A.264:14−20. A couple of selfies happened in October 2022. J.A.264:21−23. On 12/03/2022 an entry is Gurney's – America's Most Complete Seed and Nursery, and Kelly said most of the searches that were not CSAM were gardening. J.A.265:3−12. The gardening searches were on multiple dates over months. J.A.265:13−17. On 12/19/2022 entry 27 is 50 packs assorted Heirloom vegetable seeds 20 plus varieties. All seeds are Heirloom - DIY tool supply, and entry 117 is Middle School Cheerleaders Photos and Premium High Res Pictures - Getty Images. J.A.265:18−266:17. Three CSAM files were accessed 12/31/2022. J.A.266:18−23. Entry 445 on 01/02/2023 related to gardening, and

entries 446 and 447 on 01/03/2023 were child pornography images and videos. J.A.266:24−249:7. Entry 543 for a Harley Davidson fender website and entries 547−550 downloading child pornography were all on 01/07/2023. J.A.267:13−268:6. Entry 566 is a Harley Davidson rear fender. J.A.268:14−17. Entry 653 on 01/09/2023 is for the website First time porn, first sex for young beauties, happening on 12/25 at 6:00p.m. J.A.268:18−269:1. Entry 360 at 2:58p.m. on the same day is for Dave's Garden website. J.A.269:2−4. Entry 898 is for the website lolita preteen models 2022, accessed 01/03/2023, and Kelly said "lolita" is a very common search term for CSAM files. J.A.269:5−13. Entry 1051 is a Google lawn and garden search on 02/14/2023, and entry 1093 is the website for The Queen City Inn through priceline.com, accessed 02/28/2023. J.A.269:19−24. Entries 1221 and 1222 are CSAM images on 03/22/2023. J.A.269:25−270:6. Entry 1228 says "no nude preteen club models[.]" J.A.270:7−10. Entry 1321 is a booking search for Queen City Inn in Bangor on 03/23/2023. J.A.270:11−15. Entries 1591, 1592, and 1593 are for the United States District Court for the District of Maine website on 04/03/2023. J.A.270:17−23.

Exhibit 28 is instant messages on the phone with Brian and Deb, saying

> Hey, Deb, I'm sorry to bother you. I was hoping you're coming to town this morning, I have an interview, et cetera.
>
> 03/11/2023 1:42 Good morning, Kevin. I've been throwing up all morning, so I think we are staying put today, Buddy
>
> Hey, Kevin.

J.A.270:24–271:24.

> Exhibit 29 is more text messages from Scott
>
> Just trying to call Mike and it went to voicemail so I guess he's still sleeping anyways. Marie is on her way over there.

J.A.271:25–272:16.  The dates on those messages were 03/20/2023 and 03/25/2023.  J.A.272:17–20.

Exhibit 30 is an email found on the phone from 123leeross@gmail.com responding "please proceed" to an email from kaseymccue@fortknoxlaw.com, addressed to Kevin.  J.A.272:21–273:9.

Exhibit 31 is a text message, saying "Hey, Kevin, we're shipping to Penobscot.  Here's your Stanley tool[,]" dated 03/09/2023.  J.A.273:13–24.

Exhibit 32 is a TikTok app conversation.  J.A.274:3–13.
Communications started 04/19/2022, and small town in Maine is the
person on the phone, to whom the person in gray wrote: "Oh, good to
know. What's your name? How long have you been in the hospital?"
J.A.274:24–275:7.  The reply on 04/24/2022 is Kevin Ross, stoke (*sic*)
number nine, three days, gives the email 123leeross@gmail.com, and
provides telephone number for the phone.  J.A.275:7–276:5.

Exhibit 33 is email from helpdesk@dresserhospitality.com
referencing a Queen City Inn reservation to 123leeross@gmail.com,
mentioning Kevin Ross.  J.A.276:12–19.  The timestamp on this email is
03/23/2023.  J.A.276:24–277:1.

Kelly selected Exhibits 33, 34, and 35 from the phone extraction.
J.A.277:6–12.

### vii)   *Ross Objected to Exhibits 33, 34, and 35.  A.17:16–17.*

The District Court overruled Ross' objection, saying

Okay. So, uncharacteristically helpful, the First Circuit has
ruled on this particular issue in a case by the name of Kevin
Lee Ross—*United States versus Kevin Lee Ross* in which it
has said that: a criminal defendant may not stipulate or
admit his way out of the full evidentiary force of the case as

the government chooses to present it, so long as it meets
basic relevance and is unfairly prejudicial. Okay.
Overruled.

A.18:10−17.

Government's Exhibits 33, 34, and 35 are child pornography files
from the laptop that Kelly and the government chose. A.17:2−12.

Kelly analyzed Exhibit 7, a laptop computer and bookmarked as
CSAM over 180 files recovered from the laptop's hard drive, most
created in 2013 and 2014, approximately 50 images and 138 videos of
child pornography. J.A.281:2−282:11.

Exhibits 36 through 43 are Excel spreadsheets Kelly created from
artifacts recovered from the computer. J.A.282:15−21.

Exhibit 36 is a search recovered from the computer associated
with the Shareaza peer-to-peer file sharing program, which is software
allowing other users with the same software to share files by entering
keyword search terms that generate of list of available files.
J.A.283:6−19. Keyword PTHC searches for preteen hardcore.
J.A.284:7−16.

At the beginning of the following day, the District Court elaborated on its decision to overrule Ross' objection to Exhibits 33, 34, and 35. A.19:15−23:17.

Exhibit 37 is file names of the child pornography picture files recovered from the laptop computer. J.A.295:20−9:3.

Exhibit 38 is filenames of child pornography videos recovered from the laptop. J.A.298:2−7. All these files are child pornography, children under the age of 16−18 years old engaged in sexually explicit activity. J.A.298:23−12:3.

No child pornography videos or images were put on there between October 2014 and 2021. J.A.300:6−10. A child pornography video was put on the laptop 02/03/2022. J.A.300:1−18. Downloads happened on 03/24/2022 and 08/08/2022. J.A.300:19−301:1.

Exhibit 39 is a spreadsheet containing jump list references to the Toshiba external hard drive. J.A.301:2−6. A jump list shows files recently opened by an application, and right clicking in a program lists files recently accessed. J.A.301:8−12. This jump list refers to the laptop computer accessing the Toshiba hard drive. J.A.301:16−18.

There were no access dates from the Toshiba or the laptop to the external hard drive, so no jump files were created after 2014. J.A.301:19−302:5.

Exhibit 40 is link files found on the laptop, referencing the Toshiba external hard drive. J.A.302:6−9.

Exhibit 41 is GOM Media Player jump lists accessing child pornography files after 04/10/2021, a jump list narrowed to the GOM Media Player. J.A.305:3−11. The last access date for the GOM Media Player was 04/10/2021. J.A.305:19−22. There are multiple times and dates after that when GOM Media Player was used to access images or videos of child pornography. J.A.305:23−306:2. GOM Media Player played this PTHC video 09/06/2022. J.A.306:3−6. The second entry for GOM Media Player accessing a child pornography video is 02/28/2023. J.A.306:7−12. All these videos were accessed by the laptop. J.A.306:13−15.

Exhibit 42 is a list of devices connected to the Acer Aspire laptop. J.A.306:16−22. The laptop computer was last connected to the Toshiba external hard drive, Exhibit 8 on 12/23/2021 and to the Samsung Galaxy phone, Exhibit 6 on 08/24/2022. J.A.306:23−307:13.

Exhibit 43 is a subset of Windows event logs from the computer. J.A.307:14−18. Windows maintains a central log for almost every action on a computer, such as log-ins, unsuccessful logins with the wrong password, computer crashes followed by hard reset holding the power button, graceful shutdowns clicking the power down button, which are all logged for troubleshooting and diagnostics. J.A.307:19−308:3. There were over 150,000 logs for that computer, and this is a subset focusing on two dates. J.A.308:4−6. Kelly focused on two dates, because after reviewing the logs, Kelly noticed a break in activity from 10/20/2014 to 04/09/2021 when the computer was not powered. J.A.308:12−25.

### viii) Ross Objected to Exhibits 44, 45, and 46. J.A.310:8.

The District Court overruled Ross' objection saying, "Thank you. Same ruling; they're admitted." A.24:9−10.

Exhibits 44, 45, and 46 are child pornography files from the laptop that Kelly and the government chose. J.A.309:20−25.

Kelly analyzed the external hard drive and found 643 images and 118 videos of child pornography. J.A.311:25−312:11.

Kelly created Exhibits 47 through 48, child pornography filenames of pictures and videos recovered from the Toshiba external hard drive. J.A.312:17−313:2. Each entry is a picture of child pornography. J.A.313:9−13. The first entry is down2.JPG, created 05/15/2013, and no files were created on this external hard drive after 2014. J.A.303:16−21. The final creation date is an image of child pornography 08/12/2014, accessed after that. J.A.303:22−304:4.

Exhibit 48 is filenames of child pornography videos recovered from the Toshiba, and the first line shows a child pornography video created in May 2013. J.A.304:5−12. The last creation date is 10/10/2014 for another child pornography video. J.A.304:13−20.

### ix) *Ross Objected to Exhibits 50, 51, and 52. A.25:7.*

The District Court overruled Ross's objection saying, "Thank you. Same ruling; they're admitted." A.25:8−9.

Exhibits 50, 51, and 52 are child pornography files from the external hard drive that Kelly and the government chose. A.25:1−5.

The government read Stipulation Number 1 that Government's Exhibits 33 through 35, 44 through 46, and 50 through 52 are images produced by using an actual person

under the age of 18 engaging in sexually explicit conduct. These images of child pornography were produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce.

J.A.316:23−317:13.

Kelly knows there are several ways someone can pretend to be someone else online. J.A.318:6−11. If someone took Exhibit 6, and used Kelly's name on it, then his name could be associated with this phone even though Kelly never used it. J.A.318:8−24. Kelly's name could show in autofill. J.A.318:25−319:2.

Another way a person can pretend to be someone else on a phone is to create a fake email address or Facebook page, because no identification is required. J.A.319:6−22. Anyone can say they are someone else on Facebook and post a different picture. J.A.319:23−25. It is called catfishing. J.A.320:1−6.

Someone could steal the account information for another person, and their email and pictures could appear on a phone they had never used. J.A.320:7−321:9.

It is possible somebody else put another person's email, Facebook, hotel receipt, or digital receipts on a cell phone, and all that tells Kelly is that person's digital information is on that phone. J.A.321:19−322:1. It could be someone else just using that person's name on the phone. J.A.322:2−4.

This phone did not have a password. J.A.322:14−16.

Kelly created Exhibit 24. J.A.323:12−23. Last access dates are not always reliable, and this one is "most definitely incorrect." J.A.324:2−325:9.

Kelly's work involves what digital data is on these devices, but not who is holding the phone or laptop when searches are entered. J.A.325:23−326:12. Kelly's work does not indicate whether Ross ever touched the phone, laptop, or hard drive. J.A.326:16−24. Kelly does not know whether Ross' or Scott's fingerprints or DNA are on that phone, because Homeland Security never checked that cell phone for fingerprints or DNA. J.A.330:5−331:2.

### x)  *Evidence about Scott's Motivation*

Scott claimed to be unsure what the argument was about. J.A.159:4–8.  Insurance money was received shortly after the fire on 02/04/2023.  J.A.160:7–13.

Scott claimed there were no disputes about the insurance until Ross told everyone that Scott and Mike lied, tricked, and forced him to sign the check, but that was not raised during the fight when Scott pulled a gun.  J.A.160:14–25.

Scott asked Hadam to do something to remove Ross, if he would not allow Scott back in the house, because if Ross lies, he deserves what he gets.  J.A.166:9–15.  Scott knew that if Ross violated probation, he would be arrested and removed from the house.  J.A.173:2–8.

Scott wanted Ross removed from the house, if Ross would not cooperate.  J.A.155:20–22.  Scott and Mike thought Ross would get a parole violation, spend three to six months in jail, and by then the issues would not have been an issue anymore.  J.A.173:22–174:1.

Scott felt Ross was keeping him from living at Gary Moore Road, because Ross said Scott was not allowed within a hundred yards of him. J.A.182:25−183:2.

After Scott called Probation, Ross was arrested, and Scott moved into Ross' room, did not renew paying month-to-month rent at the cabin, and had the Toyota re-keyed.  J.A.183:3−184:17.

Scott and Ross argued about the insurance money once or twice, but Mike tried to stay out of their business, because it is better for him. J.A.207:3−8.

### xi)   *Evidence about Scott's Opportunity*

Ross goes to bed at seven, eight o'clock at night and starts snoring. J.A.191:15−18.  Scott goes to bed between nine and eleven, and Mike goes to bed between two and seven in the morning.  J.A.191:18−20.

Only Mike and Scott were on the lease for the house Probation searched, and Scott had access to it, but Scott only came there once or twice before Ross was gone.  J.A.214:4−17.

### xii) Impeachment of Scott and Mike

Chase Ossinger is the lead investigator in this case. J.A.336:3−21. Ossinger and A.U.S.A. McCormack met with Mike and Scott Ross 05/29/2024 to discuss their testimony in this trial. J.A.336:22−337:22.

Although Mike testified he did not remember what the fight was about, Ossinger wrote in his report that Mike said the fight was about money. J.A.338:23−339:20.

Although Scott testified the fight was not about money, Ossinger wrote in his report that Scott told Ossinger the fight was about living arrangements and insurance money. J.A.339:21−340:15.

On 10/03/2024, the District Court sentenced Ross on Count One to 121-months' imprisonment consecutively to 24-months' imprisonment for violating supervised release, an additional five-year term of supervised release, and a $100.00 assessment. A.26, A34.

### Summary Argument

The District Court misapplied case law in its Rule 403 analysis and admitted images of sexual child abuse without probative value. As a result, Ross was unfairly prejudiced by the risk these graphic images

had an undue tendency to suggest the jury condemn him based on jurors' disgust instead of being convinced that he possessed the images.

## Argument

**I. ADMITTING NINE IMAGES OF GRAPHIC CHILD SEXUAL ABUSE AND KELLY'S NARRATION OF THEM DURING PUBLICATION TO THE JURY VIOLATED RULE 403, BECAUSE EXHIBITS 33−35, 44−46 AND 50−52 WERE NOT PROBATIVE OF A FACT IN ISSUE, AND DOING SO PREJUDICED ROSS BY INFLAMING JURORS' PASSIONS, DISTRACTING THEM FROM "*THE QUESTION REALLY IS, DID THE DEFENDANT KNOWINGLY POSSESS THIS MATERIAL?*"**

### A. Standard of Review

The First Circuit reviews Rule 403 determinations for abuse of discretion.  F.R.E. 403; *United States v. Ross,* 837 F.3d 85, 90 (2016).

### B. Two Days before Ross' Jury Trial Began, the Government Stipulated that Exhibits 33−35, 44−46 and 50−52 Are Images of Child Pornography.

On 06/11/2024, the government filed Stipulation No. 1, which reads,

> The United States of America, by and through its counsel, Darcie N. McElwee, United States Attorney, and Andrew M. McCormack, Assistant United States Attorney, and defendant Kevin Ross, by and through his counsel,

Hunter Tzovarras, stipulate and agree that the following facts are true and deemed proved:

Government Exhibits 33−35, 44−46 and 50−52 are images produced by using an actual person under the age of eighteen engaging in sexually explicit conduct. These images of child pornography were produced using materials that have been mailed, shipped or transported in interstate or foreign commerce.

A.11, J.A.10.

On 05/28/2024, the government had proposed jury instruction number 8, which reads,

## Stipulations

The evidence in this case includes facts to which the lawyers have agreed or stipulated. A stipulation means simply that the government and the defendant accept the truth of a particular proposition or fact. Since there is no disagreement, there is no need for evidence apart from the stipulation. You must accept the stipulation as fact to be given whatever weight you choose[.]

*See Pattern Jury Instructions for the District Courts of the First Circuit*, District of Maine, Section 2.01, Internet Site Edition (2/6/24)

J.A.8, 411.

No one objected to the Stipulation instruction at the charge

conference.  J.A.334:17−335:17.  The District Court instructed the jury,

> A stipulation means simply that the government and the
> defendant accept the truth of a particular proposition or fact.
> Since there is no disagreement, there is no need for evidence
> apart from the stipulation.  You must accept the stipulation
> as fact to be given whatever weight you choose[]

(J.A. 382:17−23), gave them a copy of the Stipulation instruction, and

referred to it again when the District Court instructed the jury about

the second element.  J.A.342:10−343:4, 375:20−21.

In addition to the *Pattern Jury Instructions for the District Courts
of the First Circuit*, District of Maine, Section 2.01 stating "there is no

need for evidence apart from the stipulation.  You must accept the

stipulation as fact…[,] the stipulation is conclusive evidence of the

element.  *See Old Chief v. United States,* 519 U.S. 172, 186, 117 S.Ct.

644, 136 L.Ed.2d 574 (1997).  Although the government is not required

to stipulate (*Id.* at 183, 186−187), in this case it did.

### C. Ross Objected, but the District Court Misapplied the Law, Publishing Three Unfairly Prejudicial Images of Graphic Sexual Child Abuse.

When the government moved to admit Exhibits 33–35, Ross protested, "We stipulated that they are child pornography, your Honor, so we object to them being shown. … [S]howing it to the jury could only potentially, I guess, inflate passions and prejudices." A.17:16–17, 18:7–9.

> The District Court overruled Ross' objection, saying
>
> Okay. So, uncharacteristically helpful, the First Circuit has ruled on this particular issue in a case by the name of Kevin Lee Ross—*United States versus Kevin Lee Ross* in which it has said that: a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it, so long as it meets basic relevance and is unfairly prejudicial. Okay. Overruled.

A.18:10–17.

During publication for the jury, Kelly narrated that Exhibit 33 is an image of a small female child, probably under five years of age, lying on her back completely naked with what appears to be ejaculate on her torso, an adult's hand, and the erect penis of an adult male. J.A.278:23–279:5.

During publication for the jury, Kelly narrated that Exhibit 34 is a GIF image of a prepubescent female child, forced to perform oral sex on an adult male until he ejaculates into her mouth. J.A.279:9−14.

During publication for the jury, Kelly narrated that Exhibit 35 is sexual abuse video of a prepubescent female child, probably no more than five years of age, forced to perform oral sex on an adult male. J.A.279:23−280:12.

At the beginning of the following day, the District Court elaborated on its decision to overrule Ross' objection to Exhibits 33, 34, and 35. A.19:15−23:17. The District Court noted the parties had stipulated Exhibits 33−35, 44−46 and 50−52 are images produced by using an actual person under the age of 18 engaging in sexually explicit conduct and Ross' objection that they are unfairly prejudicial under Rule 403. A.19:21−20:4. Again the District Court cited *United States v. Ross* (837 F.3d 85 (2016)) and listed the similarities, but did not recognize any difference between the proposed stipulation in that case and the actual stipulation in the instant case. A.20:9−16. The District Court mischaracterized the objections as the same in both cases and misapplied the rule that a defendant may not propose to stipulate their

way out of the out of the full evidentiary force of the case as the government chooses to present it to the District Court's Rule 403 analysis in a case when the government has stipulated.  A.20:16−23:13.

### 1.  Three More

When the government moved to admit Exhibits 44−46, Ross protested, "Same objection as yesterday."  A.24:8.

The District Court overruled Ross' objection saying, "Thank you. Same ruling; they're admitted."  A.24:9−10.

Government's Exhibits 44, 45, and 46 are child pornography files from the laptop that Kelly and the government chose.  J.A.309:20−25.

During publication for the jury, Kelly narrated Exhibit 44 is an image found on the laptop of a prepubescent girl, naked, lying on her back with her legs spread, her vulva clearly visible, with the erect penis of an adult male in the foreground.  J.A.310:16−25.

During publication for the jury, Kelly narrated Exhibit 45 is an image found on the laptop of a prepubescent girl, standing up naked with stockings on and nothing else, and there appears to be an adult female spreading the child's vulva.  J.A.311:1−9.

During publication for the jury, Kelly narrated Exhibit 46 is a video taken from the laptop of an adult male attempting to force his erect penis into a prepubescent child.  J.A.311:12–20.

### 2. And Three More

When the government moved to admit Exhibits 50–52, Ross protested, "Same objection, your Honor."  A.25:7.

The District Court overruled Ross' objection saying, "Thank you. Same ruling; they're admitted."  A.25:8–9.

Government's Exhibits 50, 51, and 52 are child pornography files from the external hard drive that Kelly and the government chose. A.25:1–5.

During publication for the jury, Kelly narrated Exhibit 50 is an image of a prepubescent girl forced to perform oral sex on an adult male.  J.A.315:14–18.

During publication for the jury, Kelly narrated Exhibit 51 is an image of a prepubescent girl who still appears to be in a car seat with an adult male ejaculating on her face.  J.A.315:19–23.

During publication for the jury, Kelly narrated Exhibit 52 is a video of a very young girl, probably approximately 5 years of age or under, forced to perform oral sex on an adult male, titled PTHC Kitty 4YO3, meaning preteen/hardcore 4 years old.  J.A.316:6−22.

> The government then read Stipulation Number 1 that
> Government's Exhibits 33 through 35, 44 through 46, and 50
> through 52 are images produced by using an actual person
> under the age of 18 engaging in sexually explicit conduct.
> These images of child pornography were produced using
> materials that have been mailed, shipped, or transported in
> interstate or foreign commerce.

J.A.316:23−317:13.

### 3.  Unfair Prejudice Amplified

While Kelly's expertise about retrieval and analysis of data from the digital devices was appropriate, his narration about Exhibits 33−35, 44−46 and 50−52 amplified the unfair prejudice to Ross, because the graphic images of sexual child abuse did not need any analysis or explanation to understand, and the District Court instructed the jury that "[a]n expert witness has special knowledge or experience that allows the witness to give an opinion."  J.A.382:25−383:1

**D. The District Court Should Have Considered Whether the Images Lacked Probative Value after Stipulation and Weighed That Against the Risk that Publishing Graphic Images of Sexual Child Abuse Would Unfairly Prejudice Ross.**

Publishing the images does not answer what the government asked, "So the question really is, did the defendant knowingly possess this material?" J.A.345:17−23. Instead, without probative value the only purpose in publishing and narrating the images is to suggest the jury condemn Ross based on jurors' disgust instead of being convinced that he possessed the images. Unfair prejudice can result from evidence that "invites the jury to render a verdict on an improper emotional basis." *United States v. Varoudakis,* 233 F.3d 113, 122 (1st Cir. 2000).

The District Court misapplied *United States v. Ross* (837 F.3d 85 (2016) in its Rule 403 analysis of Exhibits 33−35, 44−46 and 50−52, because that case involved a proposed stipulation instead of the actual Stipulation #1 in this case. The District Court then misanalysed probative value and prejudicial effect nine times. As a result of these errors, Ross was unfairly prejudiced by the risk that graphic images of sexual child abuse had an undue tendency to suggest the jury condemn

him based on their disgust instead of being convinced that he possessed the images.

## Conclusion

Ross seeks a new trial.

## Request for Oral Argument

Ross requests oral argument. Fed. R. App. P. 34(a).

/s/ *William L. Welch, III*

_____
William L. Welch, III
wlw@wwelchattorney.com
5305 Village Center Drive, Suite 142
Columbia, Maryland 21044
Telephone: (410) 615-7186
Facsimile: (410) 630-7760
Counsel for Kevin Lee Ross
(Appointed by this Court)

## Certificate of Compliance

This Brief complies with type volume limits, because excluding the parts of the document exempted by Rule, it contains approximately 6,321 words. *See* Fed. R. App. P. 32(f).

This Brief complies with the typeface and type style requirements because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font. *See* Fed. R. App. P. 28.1(e)(2), 32(a)(7), (f).

/s/ *William L. Welch*, III
_____
William L. Welch, III

### Certificate of Service

I certify that on this 29th day of January 2025 the required copies of the foregoing Appellant's Brief were filed with the Clerk of the United States Court of Appeals for the First Circuit and a copy was delivered electronically to Lindsay Feinberg (LFeinberg@usa.doj.gov), Nicholas S. Heimbach (nicholas.heimbach@usdoj.gov), Office of the United States Attorney, 100 Middle Street, East Tower, 6th Floor, Portland, Maine 04101-4100, and Andrew McCormack (andrew.mccormack@usdoj.gov), Office of the United States Attorney, 202 Harlow Street, Suite 111, Bangor, Maine 04401-4901.

/s/ *William L. Welch*, III
_____
William L. Welch, III

# Table of Addendum Contents

Page

Order
    filed 06/04/2024 (Doc. 83)....................................................................... A.1

Stipulation #1:  Images
    filed 06/11/2024 (Doc. 87)..................................................................... A.11

Stipulation #2:  prior conviction/custody
    filed 06/11/2024 (Doc. 88)..................................................................... A.13

Stipulation #3:  Exhibits 6, 7, and 8
    filed 06/11/2024 (Doc. 89)..................................................................... A.15

Transcript excerpts, reflecting District Court's rulings on objections to
Exhibits 33−35, 44−46, 50−52 .............................................................. A.17

Judgment
    filed 10/4/2024 (Doc. 111)..................................................................... A.26

Amended Judgment
    filed 10/17/2024 (Doc. 119)................................................................... A.34

Federal Rule of Evidence 403.............................................................. A.42

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:23-cr-00073-LEW |
| | ) | |
| KEVIN LEE ROSS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON GOVERNMENT'S MOTION IN LIMINE

In July 2023, Defendant Kevin Lee Ross was indicted for the possession of child pornography.  In advance of next week's trial, the Government has filed a Motion in Limine (ECF No. 62) for a ruling permitting the Government to introduce evidence about Ross's 2014 conviction for the possession of child pornography as well as the resulting prison sentence and the terms of his supervised release.  Ross objects to the Government's request to admit his prior conviction, arguing that it is both irrelevant and unfairly prejudicial.  For the reasons below, the Motion in Limine is GRANTED.

### BACKGROUND

In October 2014, Ross was convicted for the possession of child pornography following a jury trial in this Court.  The Court sentenced Ross to 90 months' imprisonment to be followed by five years of supervised release.  Ross's terms of supervised release prohibited him from possessing unapproved or unmonitored internet devices.

**A.1**

On March 31, 2023, Scott Ross, one of the Defendant's brothers, called the United States Probation and Pretrial Services Office and reported that the Defendant possessed a cellphone and used it to view pornography.  The following week, three members of the Probation Office conducted an unannounced home inspection to determine whether the Defendant was violating the terms of his supervised release.  The probation officers searched the Defendant's bedroom and found a plastic trash bag on the floor next to the closet.  The trash bag contained a cellphone.  Two of the probation officers turned the cellphone on and saw that the screensaver was a pornographic image of a child.  The probation officers also found a plastic trash bag inside of the Defendant's closet that contained drug paraphernalia.  The Defendant admitted that the drug paraphernalia was his, but he denied knowing about or possessing the cellphone.

The probation officers also searched a 2006 Toyota Corolla that was registered in Scott Ross's name and was used by the Defendant following his release from prison in 2021.  Underneath the spare tire, one officer found a plastic trash bag that contained a computer bag.  Inside of the computer bag, the officer found an Acer laptop and a Toshiba external hard drive.  When confronted about these items, the Defendant stated that they did not belong to him.  Mike Ross, another of the Defendant's brothers, lived with the Defendant, and he disclaimed owning the cellphone and the laptop.  Scott Ross also denied owning the laptop, and he did not know if the Defendant owned a laptop.

Law enforcement performed a forensic search of the devices.  The cellphone contained over 500 images and videos of child pornography, with modification dates between April 25, 2022, to March 26, 2023.  Numerous artifacts on the cellphone

A.2

referenced the name Kevin Ross.  The laptop contained 49 images and 138 videos of child pornography.  There was a noticeable break in activity on the laptop between October 2014 and April 2021, which coincides with when the Defendant was incarcerated.  Many of the files had creation dates in 2014, and the files were accessed and viewed between April 9, 2021 (the day after the Defendant was released from prison) and March 5, 2023.  The external hard drive had 643 images and 118 videos of child pornography with creation dates of May 15, 2013, through October 10, 2014.

### DISCUSSION

The Government seeks a ruling permitting the introduction of evidence related to (1) Ross's 2014 conviction for the possession of child pornography; (2) the resulting prison sentence; and (3) the resulting terms of supervised release.  Ross objects, arguing that his prior conviction is irrelevant and that admitting it would be unfairly prejudicial.  Ross does not object to the Government introducing evidence about his prison sentence and terms of supervised release so long as the Government does not introduce evidence about the specifics of his prior conviction.

"Evidence is admissible only if [it is] relevant, probative, and not unfairly prejudicial."  *United States v. Jones*, 748 F.3d 64, 69 (1st Cir. 2014) (citing Fed. R. Evid. 401, 402, 403).  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "Relevancy is not assessed in a vacuum—it is gauged 'in light of the underlying substantive law.'"  *Bielunas v. F/V Misty Dawn*, *Inc.*, 621 F.3d 72, 76 (1st Cir. 2010) (quoting *Roy v. Austin Co.*, 194 F.3d 840, 843 (7th Cir.

1999)).   This "definition of relevance is quite expansive" since evidence "need not definitively resolve a key issue in the case." *Id.*   Rather, evidence "need only move the inquiry forward to some degree." *Id.*

"Ordinarily, the Federal Rules of Evidence prohibit a party from using a person's prior acts 'to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'" *United States v. Joubert*, 980 F. Supp. 2d 47, 49 (D.N.H. 2013) (quoting Fed. R. Evid. 404(b)(1)).   Thus, "evidence that is extrinsic to the crime charged" generally cannot be introduced "for the purpose of showing villainous propensity." *United States v. Roszkowski*, 700 F.3d 50, 56 (1st Cir. 2012).

Federal Rule of Evidence 414 is an exception to this general rule.   Rule 414 provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation.   The evidence may be considered on any matter to which it is relevant."[1]   Fed. R. Evid. 414(a); *Jones*, 748 F.3d at 69 (explaining that Rule 414(a) "overrides the ban on propensity inferences").   Thus, "Rule 414(a) explicitly permits the jury to infer from a defendant's prior acts of molestation that he was more likely to have committed the act of molestation of which he stands accused." *Joubert*, 980 F. Supp. 2d at 50.   Evidence that is admissible under Rule 414(a) is "still restricted by" Rule 403, *United States v. Sweeney*, 887 F.3d 529, 538 (1st Cir. 2018), which allows the "court [to] exclude relevant evidence if its probative

---

[1] Under Rule 414, a "child" "means a person below the age of 14," and "child molestation" includes "any conduct prohibited by 18 U.S.C. chapter 110," which includes Ross's 2014 conviction under 18 U.S.C. § 2252A.  *See* Fed. R. Evid. 414(d).

value is substantially outweighed by a danger of," among other things, "unfair prejudice." Fed. R. Evid. 403.  Evidence is unfairly prejudicial if it has "'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Sweeney*, 887 F.3d at 538 (quoting *Jones*, 748 F.3d at 70); *see also United States v. Rodriguez-Estrada*, 877 F.2d 153, 156 (1st Cir. 1989) ("By design, all evidence is meant to be prejudicial [to the opposing party]; it is only unfair prejudice which must be avoided.").

## A.    The Prior Conviction

The Government contends that Ross's 2014 conviction for the possession of child pornography is admissible under Rule 414.[2]  Ross objects, arguing that the past conviction is not relevant to the pending case and that, even if it is relevant, the prior conviction's probative value is substantially outweighed by its prejudicial effect.

Starting with relevancy, to convict Ross for possessing child pornography, the Government must prove beyond a reasonable doubt that Ross "knowingly possesse[d], or knowingly accesse[d] with intent to view" "material" "contain[ing] an image of child pornography" that moved through interstate commerce.[3]  *See* 18 U.S.C § 2252A(a)(5)(B).

---

[2] The Government alternatively argues that Ross's prior conviction is admissible under Rule 404(b), which permits introducing evidence of a defendant's prior bad acts when those acts have special relevance, such as proving the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2); *see also United States v. Landry*, 631 F.3d 597, 601–02 (1st Cir. 2011).  My analysis above focuses on the admissibility of Ross's prior conviction through Rule 414.  Alternatively, Ross's prior conviction is admissible under Rule 404(b) because it suggests that Ross knowingly possessed or knowingly accessed child pornography with the intent to view it and admitting evidence about Ross's prior conviction would not be unfairly prejudicial.

[3] More specifically, the child pornography must have been "mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or

Ross's "prior conviction [is] relevant [to this case] because it tend[s] to prove" his "sexual interest in children," thereby suggesting that he—rather than one of his brothers or someone else—knowingly possessed or accessed materials containing child pornography with the intent to view those pornographic images.  *See United States v. Thornhill*, 940 F.3d 1114, 1118 (9th Cir. 2019) (explaining the relevance of the defendant's prior conviction for sexually abusing a minor in the context of his subsequent prosecution for knowingly receiving child pornography); *see also Jones*, 748 F.3d at 70 (explaining that Rule 414 permits "propensity inferences").  Accordingly, because Ross's prior conviction is relevant, it is admissible under Rule 414, though I must consider whether it should be excluded under Rule 403.

Ross presents a two-part argument for excluding his prior conviction under Rule 403.  First, he characterizes the prior conviction as having minimal probative value, highlighting that the conviction is a decade old.  Second, Ross argues that admitting the prior conviction would be unfairly prejudicial because he would be "denied a fair trial on the current charge because the jury will condemn him based on the prior conviction." Ross's Obj. (ECF No. 75) at 2–3.

Ross underestimates the prior conviction's probative value and overestimates its prejudicial effect.  As explained above, Ross's prior conviction is particularly relevant to determining "whodunit" because the conviction suggests that Ross has a sexual interest in children and a propensity to collect and view child pornography.  *See United States v.*

transported in or affecting interstate or foreign commerce by any means, including by computer."  18 U.S.C. § 2252A(a)(5)(B).

*Majeroni*, 784 F.3d 72, 76 (1st Cir. 2015) ("The fact that the prior conduct was similar to the charged conduct enhanced its presumed probativeness."). Ross's argument that his 2014 conviction is too remote to be probative is unpersuasive as the First Circuit has repeatedly rejected similar arguments when evaluating the admission of Rule 414 evidence under Rule 403. *See*, *e.g.*, *id.* ("Nor does the fact that the prior conduct occurred over ten years before the charged conduct compel a different result."); *United States v. Joubert*, 778 F.3d 247, 254–55 (1st Cir. 2015) (finding no abuse of discretion in admitting evidence of similar child molestation acts that allegedly occurred eighteen to twenty years prior to the charged conduct).

While admitting Ross's prior conviction would certainly be prejudicial, it would not be *unfairly* prejudicial.[4] *See United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008) (explaining that "by design, all evidence is meant to be prejudicial" (quoting *United States v. Varoudakis*, 233 F.3d 113, 122 (1st Cir. 2000))). The First Circuit has cautioned that because "Rule 414 removes Rule 404(b)'s blanket ban on propensity inferences in child-molestation cases," such inferences are generally not unfairly prejudicial. *See Jones*, 748 F.3d at 70; *see also id.* at 71 ("And because Rule 414 flags this propensity inference as proper, we cannot brand the inference as *unfairly* prejudicial under Rule 403."). As for Ross's argument that admitting his prior conviction would deny him a fair trial because the jury would convict him based on his prior conviction, I will provide

---

[4] Accordingly, I reject Ross's suggestion that the Government should present its case without discussing Ross's prior conviction. *See United States v. Ross*, 837 F.3d 85, 90 (1st Cir. 2016) ("Even where a party is willing to stipulate to a critical fact, 'a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.'" (quoting *Old Chief v. United States*, 519 U.S. 172, 186–87 (1997))).

appropriate limiting instructions to the jurors about what they can and cannot infer based on Ross's prior conviction. *See id.* at 71 (describing how the district judge told jurors "that they could draw a propensity inference," "stressed that the government 'has the burden of proving that'" the defendant "'committed each of the elements of the offense' involved in the current 'indictment,'" and "reminded them that" the defendant "was 'not on trial for any act, conduct, or offense that was not charged in the indictment'").

In sum, the Government may present evidence concerning Ross's prior conviction. I now turn to the Government's requests concerning introducing evidence about the resulting prison sentence and terms of supervised release, which Ross does not object to.

## B.    The Prison Sentence

The Government intends to present evidence demonstrating that Ross was in federal custody from October 21, 2014, until April 8, 2021.

As the Government correctly observes, the dates of Ross's imprisonment are relevant because they imply that Ross, rather than someone else, "knowingly possesse[d], or knowingly accesse[d] with intent to view" "material[s]" containing images of child pornography. 18 U.S.C § 2252A(a)(5)(B). The laptop, for example, had files with creation dates before Ross was incarcerated in October 2014, and many of these files were accessed and viewed between April 9, 2021—the day after Ross was released from custody—and March 5, 2023. Similarly, the external hard drive had images and videos with creation dates of May 15, 2013, through October 10, 2014, which is shortly before Ross was taken into custody. Thus, Ross's prior prison sentence is relevant circumstantial evidence that

suggests he might have knowingly possessed or accessed the child pornography involved in this case.

## C.     The Term of Supervised Release

Lastly, the Government seeks to present evidence that Ross was on federal supervised release when the probation officers searched his residence.  The Government argues that "the search of the defendant's home" and "the call from the defendant's brother" to the Probation Office would not "make sense without the jury being informed that the defendant was on supervised release conditions as a result of his federal conviction."  Mot. at 8.

The fact that Ross was on supervised release at the time his brother called the Probation Office and the officers searched Ross's residence, is relevant "background evidence" that "provides significant explanatory information without which the jury would be left with critical unanswered questions" concerning the probation officers' investigation into Ross.  *See United States v. Wolfe*, 430 F. Supp. 3d 243, 248 (W.D. Ky. 2020). Additionally, Ross's terms of supervised release are relevant circumstantial evidence bearing on who possessed the cellphone and laptop.  The jury could infer that because Ross was not allowed to possess unapproved or unmonitored devices capable of connecting to the internet, he—as opposed to someone else—stored the devices in unusual places.  It is bizarre, after all, to keep a laptop and external hard drive underneath a vehicle's trunk, tucked next to a spare tire.

A.9

CONCLUSION

For the foregoing reasons, the Government's Motion in Limine (ECF No. 62) is

**GRANTED**.

SO ORDERED.

Dated this 4th day of June, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge

# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEVIN ROSS | Criminal No. 1:23-CR-00073-LEW |

## STIPULATION NO. 1

The United States of America, by and through its counsel, Darcie N. McElwee, United States Attorney, and Andrew M. McCormack, Assistant United States Attorney, and defendant Kevin Ross, by and through his counsel, Hunter Tzovarras, stipulate and agree that the following facts are true and deemed proved:

Government Exhibits 33-35, 44-46 and 50-52 are images produced by using an actual person under the age of eighteen engaging in sexually explicit conduct.  These images of child pornography were produced using materials that have been mailed, shipped or transported in interstate or foreign commerce.


**/s Andrew McCormack**
Andrew McCormack
Assistant United States Attorney
Counsel for United States of America

**/s/ Hunter Tzovarras**
Hunter Tzovarras, Esq.
Counsel for Kevin Ross

Dated:  June 11, 2024

A.11

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 11, 2024, I electronically filed the document(s) with the Clerk of Court using the CM/ECF system that will send notification of such filing(s) to the following:

Hunter Tzovarras, Esq.

DARCIE N. MCELWEE
United States Attorney

/s/Andrew McCormack
Assistant U.S. Attorney
United States Attorney's Office
202 Harlow Street
Bangor, Maine 04401

**A.12**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEVIN ROSS | Criminal No. 1:23-CR-00073-LEW |

### STIPULATION NO. 2

The United States of America, by and through its counsel, Darcie N. McElwee, United States Attorney, and Andrew M. McCormack, Assistant United States Attorney, and defendant Kevin Ross, by and through his counsel, Hunter Tzovarras, stipulate and agree that the following facts are true and deemed proved:

The defendant was in federal custody from October 21, 2014 until April 8, 2021 as a result of his conviction of possession of child pornography in <u>United States v. Kevin Ross</u>, 1:13-CR-00158-LEW.


**/s/ Andrew McCormack**
Andrew McCormack
Assistant United States Attorney
Counsel for United States of America

**/s/ Hunter Tzovarras**
Hunter Tzovarras, Esq.
Counsel for Kevin Ross

Dated:  June 11, 2024

**A.13**

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that on June 11, 2024, I electronically filed the document(s) with the Clerk of Court using the CM/ECF system that will send notification of such filing(s) to the following:

Hunter Tzovarras, Esq.

                          DARCIE N. MCELWEE
                          United States Attorney

                          /s/Andrew McCormack
                          Assistant U.S. Attorney
                          United States Attorney's Office
                          202 Harlow Street
                          Bangor, Maine 04401

**A.14**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | |
| v. | Criminal No. 1:23-CR-00073-LEW |
| | |
| KEVIN ROSS | |

### STIPULATION NO. 3

The United States of America, by and through its counsel, Darcie N. McElwee, United States Attorney, and Andrew M. McCormack, Assistant United States Attorney, and defendant Kevin Ross, by and through his counsel, Hunter Tzovarras, stipulate and agree that the following facts are true and deemed proved:

Exhibits 6, 7, and 8 were obtained by the United States Probation Office from the residence of Kevin Ross, Michael Ross and Scott Ross in Penobscot, Maine on April 5, 2023.  These exhibits were provided to Homeland Security Investigations Special Agent Greg Kelly for forensic examination in the same condition as the date they were obtained on April 5, 2023.


**/s Andrew McCormack**                    **/s/ Hunter Tzovarras**
Andrew McCormack                          Hunter Tzovarras, Esq.
Assistant United States Attorney          Counsel for Kevin Ross
Counsel for United States of America

Dated:  June 11, 2024

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 11, 2024, I electronically filed the document(s) with the Clerk of Court using the CM/ECF system that will send notification of such filing(s) to the following:

Hunter Tzovarras, Esq.

DARCIE N. MCELWEE
United States Attorney

/s/Andrew McCormack
Assistant U.S. Attorney
United States Attorney's Office
202 Harlow Street
Bangor, Maine 04401

**A.16**

1   A.   That's correct.

2   Q.   So, Special Agent Kelly, you mentioned earlier that you

3   found hundreds of images and videos of children engaged in

4   sexually explicit conduct on this phone; is that correct?

5   A.   That's correct.

6   Q.   So I'd like to show you now what's been marked as

7   Government's Exhibits 33, 34, and 35.

8   A.   Okay.

9   Q.   Are you familiar with these exhibits?

10  A.   I am.

11  Q.   How are you familiar with them?

12  A.   I selected these exhibits from the phone extraction.

13          MR. MCCORMACK:  Your Honor, the government moves to

14  admit Government's Exhibits 33, 34, and 35 into evidence.

15          THE COURT:  Any objection?

16          MR. TZOVARRAS:  We stipulated that they are child

17  pornography, your Honor, so we object to them being shown.

18          THE COURT:  All right.  So you want to be heard at

19  sidebar?

20          (Sidebar begins at 3:37 p.m.)

21          THE COURT:  Do you want to be heard further, go

22  ahead.

23          MR. MCCORMACK:  Sure.  Just briefly, your Honor.

24          So there are hundreds of images and videos of child

25  pornography on here.  The government has very conservatively

1   picked two images and one video from each slide.  The

2   government plans on showing it briefly.  The videos are not

3   very long either.  So the government has addressed this issue

4   in its trial brief and thinks it's appropriate in this case.

5          THE COURT:  What's the basis of the objection?

6          MR. TZOVARRAS:  We're willing to stipulate or we do

7   stipulate that it is child pornography, so showing it to the

8   jury could only potentially, I guess, inflate passions and

9   prejudices.

10          THE COURT:  Okay.  So, uncharacteristically helpful,

11   the First Circuit has ruled on this particular issue in a case

12   by the name of Kevin Lee Ross -- *United States versus Kevin*

13   *Lee Ross* in which it has said that: a criminal defendant may

14   not stipulate or admit his way out of the full evidentiary

15   force of the case as the government chooses to present it, so

16   long as it meets basic relevance and is unfairly prejudicial.

17   Okay.  Overruled.

18          MR. TZOVARRAS:  Thanks, your Honor.

19   (Government's Exhibits 33, 34, and 35 admitted in evidence.)

20         (Sidebar was concluded at 3:39 p.m.)

21         (Open Court.)

22   BY MR. MCCORMACK:

23   Q.  Special Agent Kelly, I'm going to publish now

24   Government's Exhibit 33.

25     Can you just describe for the jury what it is that we're

1              THE DEPUTY COURT CLERK:  All rise.

2              (Open court begins at 8:47 a.m.)

3              THE DEPUTY COURT CLERK:  The United States District

4    Court is now in session.  The Honorable Lance Walker

5    presiding.

6              THE COURT:  Good morning, folks.  Have a seat.

7              First of all, let's talk about jury instructions.

8              Mr. McCormack, do you have any objections or

9    contributions to the suggestion made by Attorney Tzovarras

10   last night?

11             MR. MCCORMACK:  No, your Honor, I don't.

12             THE COURT:  Okay, good.  Those will be included.

13             Mr. Tzovarras, thank you.

14             MR. TZOVARRAS:  Thank you, your Honor.

15             THE COURT:  All right.  Before we bring in the jury,

16   I wanted to elaborate briefly about my ruling at sidebar

17   yesterday concerning Mr. Ross's objection to Government's

18   Exhibit 33 through 35 and the government introducing and

19   publishing two images and one video of child pornography found

20   on a cell phone to the jury.

21             Mr. Ross correctly observed that the parties have

22   stipulated that Government's Exhibits 33 through 35; 44

23   through 46; and 50 through 52 are images produced by using an

24   actual person under the age of 18 engaging in sexually

25   explicit conduct.  Mr. Ross objected to the introduction and

1  publication of Government's Exhibits 33 through 35 arguing

2  that because of that stipulation, those exhibits were

3  irrelevant and, otherwise, should be excluded as unfairly

4  prejudicial under Rule 403 or at least as I interpret that

5  objection.

6       In response, the government noted that the

7  Government's Exhibits 33 through 35 are a very limited sample

8  of what was found on the cell phone.

9       As I noted at sidebar, the leading authority on this

10  matter is, interestingly, a First Circuit case called *United

11  States versus Kevin Lee Ross*, which is, as the name suggests,

12  concerns Mr. Ross's previous conviction for the possession of

13  child pornography in this court.  And perhaps, unsurprisingly,

14  that case is strictly similar to this one.  In addition to

15  that case, starring many of the same characters, such as the

16  same defendant, prosecutor, and defense counsel, the exact

17  same objection came up at trial after the parties stipulated

18  that computers contained child pornography and the government

19  sought, nevertheless, to introduce images and videos of child

20  pornography into evidence.

21       Judge Woodcock presided over that trial and he noted

22  that the Third Circuit, in *United States versus Cunningham*,

23  694 F.3d 372, suggested that the district court should

24  actually view the child pornography before admitting it over

25  an objection.

1          Judge Woodcock also explained that if defense counsel

2    believed that the limited number of exhibits selected by the

3    government were too extreme and did not fairly represent what

4    was on the device, he would investigate further by reviewing

5    the proffered exhibits and ruling on specific objections.

6          Defense counsel at the time, Attorney Tzovarras,

7    explained that the images did not misrepresent what was found

8    on the device, so it was unnecessary for the Court to view the

9    evidence.

10          The First Circuit explained that the better practice

11    is for a district court to view challenged evidence, as

12    distasteful as it may be, before making a ruling under Rule

13    403.  Though the Court set aside the question of whether Rule

14    403 required the district court to view the evidence because

15    the evidence against Ross was overwhelmingly -- overwhelming

16    and any error was at best harmless.

17          Yesterday, Mr. Ross did not argue that the

18    photographs and video selected by the government from the cell

19    phone misrepresented the totality of what was found on that

20    device, and Mr. Ross has not asked that I view the evidence in

21    advance of ruling on his objection.

22          Nonetheless, had I viewed the evidence beforehand, I

23    still would have admitted Government's Exhibits 33 through 35

24    and permitted the government to publish them to the jury for

25    two reasons.  First, and contrary to Mr. Ross's argument, the

1   two photographs and the video of child pornography found on

2   the cell phone remain relevant even though the parties have

3   stipulated that the cell phone contain images of child

4   pornography.  Like this case, Mr. Ross's defense at his

5   previous trial was that someone else used the devices and

6   downloaded child pornography.  In essence, Mr. Ross's previous

7   trial, like this one, was a "who-done-it" case.

8        The First Circuit explained that Mr. Ross's proposed

9   stipulation only went so far because a conviction for a

10  possession of child pornography requires demonstrating that

11  the defendant knowingly possessed material containing at least

12  one image of child pornography and that the defendant knew

13  that the material contained an image of child pornography.

14       As in his previous trial, Mr. Ross has not stipulated

15  to knowing that a device contained images of child

16  pornography.  The First Circuit explained that "because

17  knowledge was contested, the government's limited use of three

18  videos and six images among the many thousands of videos and

19  images on Ross's device -- devices demonstrated that Ross

20  could not have somehow stumbled upon these items without

21  immediately recognizing the rather content."  The First

22  Circuit's rationale as to why the child pornography remains

23  relevant despite the stipulation applies with equal force to

24  this case.

25       Second, because the images and the video of child

1   pornography are relevant to whether Mr. Ross knew that the

2   cell phone contained images of child pornography, which is one

3   of the central issues in this case, I reject his argument that

4   the images and video should be excluded under Rule 403.

5          As I explained at sidebar, even where a party is

6   willing to stipulate to a critical fact, a criminal defendant

7   may not stipulate or admit his way out of the full evidentiary

8   force of the case as the government chooses to present it, and

9   given the relevance of the images and video, as well as the

10  government's selected presentation of a very limited portion

11  of what was found on the cell phone, the probative value of

12  the evidence is not substantially outweighed by the risk of

13  unfair prejudice.

14         Nevertheless, in light of that ruling and

15  clarification on my ruling yesterday, Attorney Tzovarras,

16  please let me know if you would like me to view the child

17  pornography in advance?

18         MR. TZOVARRAS:  No, we're not asking for that, your

19  Honor.  I understand your ruling.

20         THE COURT:  Thank you.  All right.  Very good.

21         Gents, are we ready for the jury?

22         MR. MCCORMACK:  Yes, your Honor.

23         MR. TZOVARRAS:  Yes, we are.

24         THE COURT:  Thank you.

25         THE DEPUTY COURT CLERK:  All rise.  Jury entering.

1   Q.   So are 44 and 45 images of child pornography?

2   A.   They are.

3   Q.   And 46 is that a video?

4   A.   It is.

5        MR. MCCORMACK:  Your Honor, the government moves to

6   admit Government's Exhibits 44, 45, and 46 in evidence.

7        THE COURT:  Any objection to those exhibits?

8        MR. TZOVARRAS:  Same objection as yesterday.

9        THE COURT:  Thank you.  Same ruling; they're

10  admitted.

11       MR. MCCORMACK:  Your Honor, may I publish?

12       THE COURT:  May we pause for a minute so Ms. Rodrigue

13  can take care of the monitors.

14  (Government's Exhibits 44, 45, and 46 in evidence.)

15       THE COURT:  You're all set, Mr. McCormack.

16  Q.   So I'd like to show you what's been marked as

17  Government's Exhibit 44.

18       Special Agent Kelly, can you tell us what we're looking

19  at here?

20  A.   It is a prepubescent girl, naked, lying on her back with

21  her legs spread, her vulva clearly visible, with the erect

22  penis of an adult male in the foreground of the frame.

23  Q.   And this was an image that was found on the laptop

24  computer; is that correct?

25  A.   It is.

1    A.    -- these are representative of child pornography files

2    that were recovered from the Toshiba external hard drive, two

3    images and one video.

4          MR. MCCORMACK:  Your Honor, the government moves to

5    admit Government's Exhibits 50, 51, and 52 into evidence.

6          THE COURT:  Any objection?

7          MR. TZOVARRAS:  Same objection, your Honor.

8          THE COURT:  Thank you.  Same ruling; they're

9    admitted.

10   (Government's Exhibits 50, 51, and 52 in evidence.)

11         MR. MCCORMACK:  The government moves to publish, your

12   Honor.

13         THE COURT:  Thank you.  All right.  Proceed.

14   Q.    I'd like to show you what's been marked as Government's

15   Exhibit 50.

16         What are we looking at here, Special Agent Kelly?

17   A.    It's a prepubescent girl forced to perform oral sex on an

18   adult male.

19   Q.    I show you what's been admitted as Government's

20   Exhibit 51.

21         What are we looking at here, Special Agent Kelly?

22   A.    It's a prepubescent girl who still appears to be in a car

23   seat with an adult male ejaculating on her face.

24   Q.    And, Special Agent Kelly, we stated earlier this is just

25   three examples of the dozens of images and videos that were

AO 245B  (Rev.09/19) Judgment in a Criminal Case
Sheet 1

# United States District Court
## District of Maine

UNITED STATES OF AMERICA

v.

KEVIN LEE ROSS

**JUDGMENT IN A CRIMINAL CASE**

Case Number: 1:23-cr-00073-LEW-1
USM Number: 09060-036

Hunter J. Tzovarras, Esq.
Defendant's Attorney

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____
☐ pleaded nolo contendere to count(s) _____ which was accepted by the court.
☒ was found guilty on count(s) <u>One of the Indictment</u> after a plea of not guilty.

**The defendant is adjudicated guilty of these offenses:**

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2252A(a)(5)(B), 18 U.S.C. § 2252A(b)(2) | Possession of Child Pornography | April 5, 2023 | One |

The defendant is sentenced as provided in pages 2 through 8 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____.
☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

October 3, 2024
Date of Imposition of Judgment

/s/ Lance E. Walker
Signature of Judge

Lance E. Walker, Chief U.S. District Judge
Name and Title of Judge

10/4/2024
Date Signed

**A.26**

AO 245B  (Rev. 09/19) Judgment in a Criminal Case
Sheet 2 -- Imprisonment

Judgment—Page    2    of    8

DEFENDANT:        KEVIN LEE ROSS
CASE NUMBER:      1:23-cr-00073-LEW-1

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of <u>121 months to be served consecutive to the sentence in USA v. Kevin Lee Ross; 1:13-cr-00158-LEW.</u>

☒  The court makes the following recommendations to the Bureau of Prisons:
   <u>The defendant for enrollment in the 500 Hour Comprehensive Drug Treatment Program.</u>
   <u>The defendant be placed in a Bureau of Prisons facility that can provide sex offender treatment.</u>
   <u>The defendant be placed in a Bureau of Prisons facility that can address his/her medical needs.</u>

☒  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:
   ☐   at _____ ☐ a.m. ☐ p.m. on _____.
   ☐   as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons.
   ☐   before 2 p.m. on _____.
   ☐   as notified by the United States Marshal.
   ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____

a _____ ,  with a certified copy of this judgment.


_____
                            UNITED STATES MARSHAL


By _____
                            DEPUTY UNITED STATES MARSHAL

**A.27**

AO 245B  (Rev. 09/19) Judgment in a Criminal Case
Sheet 3 -- Supervised Release

Judgment—Page    3    of    8

DEFENDANT:        KEVIN LEE ROSS
CASE NUMBER:      1:23-cr-00073-LEW-1

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of: 5 years.

## MANDATORY CONDITIONS

1.        You must not commit another federal, state or local crime.

2.        You must not unlawfully possess a controlled substance.

3.        You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of
        release from imprisonment and at least two additional drug tests during the term of supervision, but not more than 120
        drug tests per year thereafter, as directed by the probation officer.
                ☐ The above drug testing condition is suspended, based on the court's determination that you
                pose a low risk of future substance abuse. *(check if applicable)*

4.   ☒ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a
        sentence of restitution. *(check if applicable)*

5.   ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*

6.   ☒ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901,
        *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in
        which you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

7.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*


If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the
Schedule of Payments of this judgment.


You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the
attached page.

**A.28**

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page    4    of    8

DEFENDANT:        KEVIN LEE ROSS
CASE NUMBER:      1:23-cr-00073-LEW-1

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

**U.S. Probation Office Use Only**
A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

**A.29**

AO 245B  (Rev. 09/19) Judgment in a Criminal Case
Sheet 3D – Supervised Release

Judgment—Page    5    of    8

DEFENDANT:          KEVIN LEE ROSS
CASE NUMBER:        1:23-cr-00073-LEW-1

## SPECIAL CONDITIONS OF SUPERVISION

1) The defendant shall not possess any "visual depiction" (as defined in 18 U.S.C. § 2256), including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of "sexually explicit conduct" (as defined in 18 U.S.C. § 2256;)

2) The defendant shall not be employed in a job requiring contact with children under the age of 18 or with the victim. This restriction does not extend to unforeseen contact during the employment. If the defendant has unforeseen contact with a minor during employment, the defendant must report that to the probation officer immediately;

3) Defendant shall submit to periodic random polygraph examinations as directed by the probation officer to assist in treatment and/or case planning related to behaviors potentially associated with sex offense conduct. No violation proceedings will arise solely on the defendant failure to pass a polygraph examination, or on the defendant refusal to answer polygraph questions based on 5th amendment grounds. Such an event could, however, generate a separate investigation. Defendant shall pay/co-pay for such services to the supervising officer satisfaction;

4) The defendant shall not go to, or remain at, any place where the defendant knows children under the age of 18 are likely to be, including parks, schools, playgrounds, and childcare facilities;

5) The defendant shall live at a residence approved in advance by the probation office;

6) The defendant shall not associate, or have verbal, written, telephonic or electronic communication with persons under the age of eighteen, except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense, and who has been approved by the probation officer. This restriction does not extend to incidental contact during ordinary daily activities in public places;

7) Defendant shall not use or possess any controlled substance, alcohol or other intoxicant; and shall participate in a program of drug and alcohol abuse therapy to the supervising officer's satisfaction. This shall include testing to determine if Defendant has used drugs or intoxicants. Defendant shall pay/co-pay for services during such treatment to the supervising officer's satisfaction. Defendant shall not obstruct or tamper, or try to obstruct or tamper, in any way, with any tests;

8) A United States probation officer may conduct a search of the defendant and of anything the defendant owns, uses, or possesses if the officer reasonably suspects that the defendant has violated a condition of supervised release and reasonably suspects that evidence of the violation will be found in the areas to be searched. Searches must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation of release.

9) The defendant shall participate and comply with the requirements of the Computer and Internet Monitoring Program (which may include partial or full restriction of computer(s), internet/intranet, and/or internet-capable devices), and shall pay for services, directly to the monitoring company. The defendant shall submit to periodic or random unannounced searches of his/her computer(s), storage media, cloud based electronic service/storage accounts and/or other electronic or internet-capable device(s) performed by the probation officer. This may include the retrieval and copying of any prohibited data. Or, if warranted, the removal of such system(s) or electronic service storage/accounts for the purpose of conducting a more comprehensive search.

10) The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. 16901, et seq), as directed by the probation officer, the Bureau of Prisons, and any state sex offender agency in which he or she resides, works or is a student, or was convicted of a qualifying offense;

11) Defendant shall fully participate in sex offender treatment as directed by the supervising officer. Defendant shall pay/copay for services during such treatment to the supervising officer's satisfaction. He/she shall abide by all policies and procedures of that program.

**A.30**

AO 245B  (Rev. 09/19) Judgment in a Criminal Case
Sheet 5 – Criminal Monetary Penalties

Judgment—Page    6    of    8

DEFENDANT:           KEVIN LEE ROSS
CASE NUMBER:      1:23-cr-00073-LEW-1

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Count | Assessment | Restitution | Fine | AVAA Assessment * | JVTA Assessment ** |
|---|---|---|---|---|---|---|
|  | One | $100 | $85,000 | $0 |  |  |
| **Totals:** |  | $100 | $85,000 | $0 |  |  |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| **Best Necklace (Maria)** Payable to Carol L. Hepburn I/T/F Maria P.O.Box 17718, Seattle, WA 98127 |  | $3,000 |  |
| **Blue Pillow1 (Henley)** Payable to Deborah Bianco, In Trust for Henley, P.O. Box 6503, Bellevue, WA 98008 |  | $3,000 | 1 |
| **Cinderblockblue (Jenny)** Payable to Marsh Law Firm PLLC in Trust for Jenny, Attn: Jane, P.O. Box 4668 #65135, New York, NY 10163-4668 |  | $3,000 | 1 |
| **TOTALS** | $        continued | $        continued |  |

☐ Restitution amount ordered pursuant to plea agreement  $

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☒ the interest requirement is waived for the    ☐ fine    ☒ restitution.

☐ the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**A.31**

AO 245B  (Rev. 09/19) Judgment in a Criminal Case
Sheet 5B – Criminal Monetary Penalties

Judgment—Page   7   of   8

DEFENDANT:          KEVIN LEE ROSS
CASE NUMBER:        1:23-cr-00073-LEW-1

## ADDITIONAL RESTITUTION PAYEES

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| **Cinderblockblue (Amy)** Payable to Marsh Law Firm PLLC in Trust for Amy, Attn: Jane, P.O. Box 4668 #65135, New York, NY 10163-4668 | | $3,000 | |
| **Cinderblockblue (Jane)** Payable to Marsh Law Firm in Trust for Jane, Attn: Jane, P.O. Box 4668, #65135, New York, NY 10163-4668 | | $3,000 | |
| **Jan Socks2 (Savannah)** Carol L. Hepburn I/T/F Savannah, P.O. Box 17718, Seattle, WA 98127 | | $5,000 | 1 |
| **Jan Socks3 (Skylar)**, Payable to Carol Hepburn I/T/F Skylar, P.O. Box 17718, Seattle, WA 98127 | | $5,000 | 1 |
| **Jan Socks4 (Sally)** Payable to Carol Hepburn I/T/F Sally, P.O. Box 17718, Seattle, WA 98127 | | $5,000 | 1 |
| **Jenny**, Payable to Marsh Law Firm in Trust for Jenny, P.O. Box 4668, #65135, New York, NY 10163-4668 | | $5,000 | |
| **Lighthouse1 (Maureen)**, c/o Deborah Bianco, In Trust for Maureen, P.O. Box 6503, Bellevue, WA 98008 | | $3,000 | |
| **Vicky (Lily)**, Payable to Carol Hepburn I/T/F Lily, P.O. Box 17718, Seattle, WA 98127 | | $6,000 | |
| **Marineland1 (Sarah)** Payable to Carol Hepburn I/T/F Sarah, P.O. Box 17718, Seattle, WA 98127 | | $5,000 | 1 |
| **Misty (Amy)** Payable to Marsh Law Firm PLLC in rust for Amy, P.O. Box 4668 #65135, New York, NY 10163-4668 | | $3,000 | |
| **Motorcouch1 (Cara)** Payable to Carol Hepburn I/T/F Cara, P.O. Box 17718, Seattle WA 98127 | | $3,000 | 1 |
| **Tara (Sloane)**, Payable to Carol Hepburn I/T/F Sloan, P.O. Box 17718, Seattle, WA 98127 | | $7,000 | 1 |
| **Sweet Pink Sugar (Mya)**, Payable to Deborah Bianco, in trust for Mya, P.O. Box 6503, Bellevue, WA 98008 | | $3,000 | 1 |
| **Sweet White Sugar (Pia)** payable to Deborah Bianco, In trust for Pia, P.O. Box 6503, Bellevue, WA 98008 | | $7,000 | 1 |
| **Aprilblonde (Angela)** Payable to Restore the Child in Trust for Angela, Restore the Child, PLLC, 2522 N. Proctor Street, Ste 85, Tacoma, WA 98406 | | $5,000 | 1 |
| **Aprilblonde (April)**, Payable to Restore the Child in Trust for April, Restore the Child, PLLC, 2522 N. Proctor Street, Ste 85, Tacoma, WA 98406 | | $5,000 | 1 |
| **Ashley**, Payable to Shannon Conley, Trustee of L.A.L. Trust, Shannon Conley, Law Office of Nay & Friedenberg, 6500 SW Macadam Ave.Ste 300, Portland, OR 97239 | | $3,000 | |
| **TOTALS** | $ _____ | $ ___ $85,000 | |

**A.32**

AO 245B  (Rev. 09/19) Judgment in a Criminal Case
Sheet 6 – Schedule of Payments

Judgment—Page    8    of    8

DEFENDANT:          KEVIN LEE ROSS
CASE NUMBER:        1:23-cr-00073-LEW-1

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A  ☒  Lump sum payment of $85,100 due immediately, balance due
   ☒  Any amount that the defendant is unable to pay now is due and payable during the term of incarceration. Upon release from incarceration, any remaining balance shall be paid in monthly installments, to be initially determined in amount by the supervising officer. Said payments are to be made during the period of supervised release, subject always to review by the sentencing judge on request, by either the defendant or the government.
       ☐  not later than                              , or
       ☐  in accordance with    ☐  C,    ☐  D,    ☐       E, or ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with    ☐  C,    ☐  D, or    ☐  F below); or

C  ☐  Payment in equal            *(e.g., weekly, monthly, quarterly)* installments of $          over a period of
                                  *(e.g., months or years)*, to commence            *(e.g., 30 or 60 days)* after the date of this judgment; or

D  ☐  Payment in equal            *(e.g., weekly, monthly, quarterly)* installments of $          over a period of
                                  *(e.g., months or years)*, to commence            *(e.g., 30 or 60 days)* after release from imprisonment to a
       term of supervision; or

E  ☐  Payment during the term of supervised release will commence within            *(e.g., 30 or 60 days)* after release from
       imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

| Case Number Defendant and Co-Defendant Names *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate. |
|---|---|---|---|
| | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☒  The defendant shall forfeit the defendant's interest in the following property to the United States:
   The Defendant shall forfeit all property constituting or derived from any proceeds said Defendant obtained directly or indirectly as a result of the violations alleged in the charging instrument, any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations, including but not limited to: Samsung phone, IMEI: 357816338370404; Acer Aspire Laptop, Serial Number LXRP020200404D4321601, containing a 160GB Western Digital Hard Drive, Serial Number wX81AA367091; and Toshiba External Hard Drive, Serial Number 32AFHSISRE8.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

## A.33

AO 245C (Rev. 09/19) Amended Judgment in a Criminal Case
Sheet 1

(NOTE: Identify Changes with Asterisks (*))

# United States District Court
## District of Maine

UNITED STATES OF AMERICA

v.

KEVIN LEE ROSS

Date of Original Judgment: 10/3/2024
(Or Date of Last Amended Judgment)

**AMENDED JUDGMENT IN A CRIMINAL CASE**

2024 OCT 17 A 8:58

Case Number: 1:23-cr-00073-LEW-1
USM Number: 09060-036

Hunter J. Tzovarras, Esq.
Defendant's Attorney

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____
☐ pleaded nolo contendere to count(s) _____ which was accepted by the court.
☒ was found guilty on count(s) One of the Indictment after a plea of not guilty.

**The defendant is adjudicated guilty of these offenses:**

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2252A(a)(5(B) 18 U.S.C. § 2252A(b)(2) | Possession of Child Pornography | April 5, 2023 | One |

The defendant is sentenced as provided in pages 2 through 8 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____.
☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

October 3, 2024
Date of Imposition of Judgment

/s/ Lance E. Walker
Signature of Judge

Lance E. Walker, Chief U.S. District Judge
Name and Title of Judge

October 17, 2024
Date

**A.34**

AO 245C (Rev. Rev. 09/19) Amended Judgment in a Criminal Case          (NOTE: Identify Changes with Asterisks (*))
     Sheet 2 – Imprisonment

|  | Judgment—Page | 2 | of | 8 |

DEFENDANT:      KEVIN LEE ROSS
CASE NUMBER:   1:23-cr-00073-LEW-1

## IMPRISONMENT

     The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of <u>121 months to be served consecutive to the sentence in USA v. Kevin Lee Ross; 1:13-cr-00158-LEW.</u>

☒   The court makes the following recommendations to the Bureau of Prisons:
     <u>The defendant for enrollment in the 500 Hour Comprehensive Drug Treatment Program.</u>
     <u>The defendant be placed in a Bureau of Prisons facility that can provide sex offender treatment.</u>
     <u>The defendant be placed in a Bureau of Prisons facility that can address his/her medical needs.</u>

☒   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:
     ☐       at _____ ☐ a.m. ☐ p.m. on _____.
     ☐       as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
     ☐       before 2 p.m. on _____.
     ☐       as notified by the United States Marshal.
     ☐       as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____
_____
_____
_____

     Defendant delivered on _____ to _____
at _____ , with a certified copy of this judgment.

                    _____
                                UNITED STATES MARSHAL

                    By _____
                                DEPUTY UNITED STATES MARSHAL

**A.35**

AO 245C (Rev. 09/19) Amended Judgment in a Criminal Case          (NOTE:  Identify Changes with Asterisks (*))
    Sheet 3 – Supervised Release

| | Judgment—Page | 3 | of | 8 |

DEFENDANT:      KEVIN LEE ROSS
CASE NUMBER:    1:23-cr-00073-LEW-1

## SUPERVISED RELEASE

**SUPERVISED RELEASE**

Upon release from imprisonment, you will be on supervised release for a term of  5 years.

## MANDATORY CONDITIONS

1.      You must not commit another federal, state or local crime.

2.      You must not unlawfully possess a controlled substance.

3.      You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two additional drug tests during the term of supervision, but not more than 120 drug tests per year thereafter, as directed by the probation officer.
      ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*

4.      ☒ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*

5.      ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*

6.      ☒ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

7.      ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments of this judgment.

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**A.36**

AO 245C (Rev. 09/19) Amended Judgment in a Criminal Case             (NOTE: Identify Changes with Asterisks (*))
Sheet 3A – Supervised Release

| | | | Judgment—Page | 4 | of | 8 |

DEFENDANT:          KEVIN LEE ROSS
CASE NUMBER:    1:23-cr-00073-LEW-1

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

**U.S. Probation Office Use Only**
A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____ _____   Date _____

## A.37

AO 245C (Rev. 09/19) Amended Judgment in a Criminal Case
     Sheet 3D – Supervised Release

(NOTE:  Identify Changes with Asterisks (*))

Judgment—Page   5   of  8

DEFENDANT:        KEVIN LEE ROSS
CASE NUMBER:   1:23-cr-00073-LEW-1

## SPECIAL CONDITIONS OF SUPERVISION

1) The defendant shall not possess any "visual depiction" (as defined in 18 U.S.C. § 2256), including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of "sexually explicit conduct" (as defined in 18 U.S.C. § 2256;)

2) The defendant shall not be employed in a job requiring contact with children under the age of 18 or with the victim. This restriction does not extend to unforeseen contact during the employment. If the defendant has unforeseen contact with a minor during employment, the defendant must report that to the probation officer immediately;

3) Defendant shall submit to periodic random polygraph examinations as directed by the probation officer to assist in treatment and/or case planning related to behaviors potentially associated with sex offense conduct. No violation proceedings will arise solely on the defendant failure to pass a polygraph examination, or on the defendant refusal to answer polygraph questions based on 5th amendment grounds. Such an event could, however, generate a separate investigation. Defendant shall pay/co-pay for such services to the supervising officer satisfaction;

4) The defendant shall not go to, or remain at, any place where the defendant knows children under the age of 18 are likely to be, including parks, schools, playgrounds, and childcare facilities;

5) The defendant shall live at a residence approved in advance by the probation office;

6) The defendant shall not associate, or have verbal, written, telephonic or electronic communication with persons under the age of eighteen, except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense, and who has been approved by the probation officer. This restriction does not extend to incidental contact during ordinary daily activities in public places;

7) Defendant shall not use or possess any controlled substance, alcohol or other intoxicant; and shall participate in a program of drug and alcohol abuse therapy to the supervising officer's satisfaction. This shall include testing to determine if Defendant has used drugs or intoxicants. Defendant shall pay/co-pay for services during such treatment to the supervising officer's satisfaction. Defendant shall not obstruct or tamper, or try to obstruct or tamper, in any way, with any tests;

8) A United States probation officer may conduct a search of the defendant and of anything the defendant owns, uses, or possesses if the officer reasonably suspects that the defendant has violated a condition of supervised release and reasonably suspects that evidence of the violation will be found in the areas to be searched. Searches must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation of release.

9) The defendant shall participate and comply with the requirements of the Computer and Internet Monitoring Program (which may include partial or full restriction of computer(s), internet/intranet, and/or internet-capable devices), and shall pay for services, directly to the monitoring company. The defendant shall submit to periodic or random unannounced searches of his/her computer(s), storage media, cloud based electronic service/storage accounts and/or other electronic or internet-capable device(s) performed by the probation officer. This may include the retrieval and copying of any prohibited data. Or, if warranted, the removal of such system(s) or electronic service storage/accounts for the purpose of conducting a more comprehensive search.

10) The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. 16901, et seq), as directed by the probation officer, the Bureau of Prisons, and any state sex offender agency in which he or she resides, works or is a student, or was convicted of a qualifying offense;

11) Defendant shall fully participate in sex offender treatment as directed by the supervising officer. Defendant shall pay/copay for services during such treatment to the supervising officer's satisfaction. He/she shall abide by all policies and procedures of that program.

**A.38**

AO 245C (Rev. 09/19) Amended Judgment in a Criminal Case
Sheet 5 – Criminal Monetary Penalties

(NOTE:  Identify Changes with Asterisks (*))

| | Judgment—Page | 6 | of | 8 |

DEFENDANT:          KEVIN LEE ROSS
CASE NUMBER:      1:23-cr-00073-LEW-1

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Count | Assessment | Restitution | Fine | AVAA Assessment * | JVTA Assessment ** |
|---|---|---|---|---|---|---|
| | One | $100 | $84,000* | $0 | | |
| Totals: | | $100 | $84,000 | $0 | | |

☐  The determination of restitution is deferred until _____ .  An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

☒  The defendant shall receive credit for any amounts previously paid.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| **Best Necklace (Maria)** Payable to Carol L. Hepburn I/T/F Maria P.O.Box 17718, Seattle, WA 98127 | | $3,000 | |
| **Blue Pillow1** (Henley) Payable to Deborah Bianco, In Trust for Henley, P.O. Box 6503, Bellevue, WA 98008 | | $3,000 | |
| **Cinderblockblue (Jane)** Payable to Marsh Law Firm in Trust for Jane, Attn: Jane, P.O. Box 4668, #65135, New York, NY 10163-4668 | | $3,000 | 1 |
| **TOTALS** | $ _____ continued | $ _____ continued | 1 |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☒  the interest requirement is waived for the   ☐  Fine   ☒  restitution.

    ☐  the interest requirement for the   ☐  fine   ☐  restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**A.39**

AO 245C (Rev. 09/19) Amended Judgment in a Criminal Case                                    (NOTE:  Identify Changes with Asterisks (*))
      Sheet 5A – Criminal Monetary Penalties

| | | | Judgment—Page 7 of 8 |
|---|---|---|---|

DEFENDANT:        KEVIN LEE ROSS
CASE NUMBER:    1:23-cr-00073-LEW-1

## ADDITIONAL TERMS FOR CRIMINAL MONETARY PENALTIES

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| **Jan Socks1** (Sierra)  Carol L. Hepburn, I/T/F Sierra, P.O. Box 17118, Seattle, WA 98127 * | | $5,000 * | 1 |
| **Jan Socks2 (Savannah)** Carol L. Hepburn I/T/F Savannah, P.O. Box 17718, Seattle, WA 98127 | | $5,000 | 1 |
| **Jan Socks3 (Skylar)**, Payable to Carol Hepburn I/T/F Skylar, P.O. Box 17718, Seattle, WA 98127 | | $5,000 | 1 |
| **Jan Socks4 (Sally)** Payable to Carol Hepburn I/T/F Sally, P.O. Box 17718, Seattle, WA 98127 | | $5,000 | 1 |
| **Jenny,** Payable to Marsh Law Firm in Trust for Jenny, P.O. Box 4668, #65135, New York, NY 10163-4668 | | $5,000 | |
| **Lighthouse1 (Maureen),** c/o Deborah Bianco, In Trust for Maureen, P.O. Box 6503, Bellevue, WA 98008 | | $3,000 | |
| **Vicky (Lily),** Payable to Carol Hepburn I/T/F Lily, P.O. Box 17718, Seattle, WA 98127 | | $6,000 | 1 |
| **Marineland1 (Sarah)** Payable to Carol Hepburn I/T/F Sarah, P.O. Box 17718, Seattle, WA 98127 | | $5,000 | 1 |
| **Misty (Amy)** Payable to Marsh Law Firm PLLC in rust for Amy, P.O. Box 4668 #65135, New York, NY 10163-4668 | | $3,000 | |
| **Motorcouch1 (Cara)**Payable to Carol Hepburn I/T/F Cara, P.O. Box 17718, Seattle WA 98127 | | $3,000 | 1 |
| **Tara (Sloane),** Payable to Carol Hepburn I/T/F Sloan, P.O. Box 17718, Seattle, WA 98127 | | $7,000 | 1 |
| **Sweet Pink Sugar (Mya),** Payable to Deborah Bianco, in trust for Mya, P.O. Box 6503, Bellevue, WA 98008 | | $3,000 | 1 |
| **Sweet White Sugar (Pia)** payable to Deborah Bianco, In trust for Pia, P.O. Box 6503, Bellevue, WA 98008 | | $7,000 | 1 |
| **Aprilblonde (Angela)** Payable to Restore the Child in Trust for Angela, Restore the Child, PLLC, 2522 N. Proctor Street, Ste 85, Tacoma, WA 98406 | | $5,000 | 1 |
| **Aprilblonde (April),** Payable to Restore the Child in Trust for April, Restore the Child, PLLC, 2522 N. Proctor Street, Ste 85, Tacoma, WA 98406 | | $5,000 | 1 |
| **Ashley,** Payable to Shannon Conley, Trustee of L.A.L. Trust, Shannon Conley, Law Office of Nay & Friedenberg, 6500 SW Macadam Ave.Ste 300, Portland, OR 97239 | | $3,000 | 1 |
| **TOTALS** | $ _____ | $ $84,000* _____ | |

**A.40**

AO 245C (Rev. 09/19) Amended Judgment in a Criminal Case                                    (NOTE:  Identify Changes with Asterisks (*))
Sheet 6 – Schedule of Payments

Judgment—Page   8   of   8

DEFENDANT:          KEVIN LEE ROSS
CASE NUMBER:       1:23-cr-00073-LEW-1

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**   ☒   Lump sum payment of $84,100 due immediately, balance due
        ☐   Any amount that the defendant is unable to pay now is due and payable during the term of incarceration. Upon release from
            incarceration, any remaining balance shall be paid in monthly installments, to be initially determined in amount by the supervising
            officer. Said payments are to be made during the period of supervised release, subject always to review by the sentencing judge on
            request, by either the defendant or the government.
            ☐   not later than                                    , or
            ☐   in accordance with   ☐  C,   ☐  D,   ☐     E, or ☐ F below; or

**B**   ☐   Payment to begin immediately (may be combined with   ☐  C,   ☐  D, or   ☐ F below); or

**C**   ☐   Payment in equal         *(e.g., weekly, monthly, quarterly)* installments of $       over a period of
                                     *(e.g., months or years),* to commence         *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**   ☐   Payment in equal         *(e.g., weekly, monthly, quarterly)* installments of $       over a period of
                                     *(e.g., months or years),* to commence         *(e.g., 30 or 60 days)* after release from imprisonment to a
            term of supervision; or

**E**   ☐   Payment during the term of supervised release will commence within         *(e.g., 30 or 60 days)* after release from
            imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**   ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due
during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate. |
|---|---|---|---|
| | | | |

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☒   The defendant shall forfeit the defendant's interest in the following property to the United States:

The Defendant shall forfeit all property constituting or derived from any proceeds said Defendant obtained directly or indirectly as a
result of the violations alleged in the charging instrument, any and all property used or intended to be used in any manner or part to
commit and to facilitate the commission of the violations, including but not limited to: Samsung phone, IMEI: 357816338370404; Acer
Aspire Laptop, Serial Number LXRP020200404D4321601, containing a 160GB Western Digital Hard Drive, Serial Number
wX81AA367091; and Toshiba External Hard Drive, Serial Number 32AFHSISRE8.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5)
fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution
and court costs.

## A.41

(b) the fact is of consequence in determining the action.

(As amended Apr. 26, 2011, eff. Dec. 1, 2011.)

## Rule 402. General Admissibility of Relevant Evidence

Relevant evidence is admissible unless any of the following provides otherwise:
- the United States Constitution;
- a federal statute;
- these rules; or
- other rules prescribed by the Supreme Court.

Irrelevant evidence is not admissible.

(As amended Apr. 26, 2011, eff. Dec. 1, 2011.)

## Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

(As amended Apr. 26, 2011, eff. Dec. 1, 2011.)

## Rule 404. Character Evidence; Other Crimes, Wrongs, or Acts

(a) CHARACTER EVIDENCE.

(1) *Prohibited Uses.* Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

(2) *Exceptions for a Defendant or Victim in a Criminal Case.* The following exceptions apply in a criminal case:

(A) a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it;

(B) subject to the limitations in Rule 412, a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted, the prosecutor may:

(i) offer evidence to rebut it; and

(ii) offer evidence of the defendant's same trait; and

(C) in a homicide case, the prosecutor may offer evidence of the alleged victim's trait of peacefulness to rebut evidence that the victim was the first aggressor.

(3) *Exceptions for a Witness.* Evidence of a witness's character may be admitted under Rules 607, 608, and 609.

(b) OTHER CRIMES, WRONGS, OR ACTS.

(1) *Prohibited Uses.* Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

(3) *Notice in a Criminal Case.* In a criminal case, the prosecutor must: