# CA No. 24-1907

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

UNITED STATES,

Appellee,

v.

KEVIN LEE ROSS,

Defendant-Appellant.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

## BRIEF OF APPELLEE UNITED STATES

Craig M. Wolff
Acting United States Attorney

Lindsay B. Feinberg
Assistant U.S. Attorney
100 Middle Street
East Tower, Sixth Floor
Portland, ME 04101
(207) 780-3257

# TABLE OF CONTENTS

Table of Authorities ..................................................................................ii

Statement of Issue Presented ................................................................. v

Statement of the Case ............................................................................. 1
    A.    Procedural Overview .............................................................. 1
    B.    Trial Evidence ......................................................................... 3
        1.    While Ross was on supervised release for possessing child pornography, three unauthorized devices were located in Ross's bedroom and vehicle during a probation search ............................................................. 3
        2.    The forensic examination of the three devices reveals over one thousand child pornography files, only nine of which are introduced at trial ........................................ 6
        3.    The forensic examination of the three devices, along with other evidence introduced at trial, establishes that Ross used the devices containing child pornography for years ................................................................. 14
        4.    Ross holds the government to its burden of establishing both that he knowingly possessed the three devices and that he knew that the three devices contained images of child pornography ..................................................... 20

Summary of Arguments ........................................................................ 25

Arguments .............................................................................................. 26
I.    THE DISTRICT COURT PROPERLY BALANCED THE COMPETING CONCERNS OF FEDERAL RULE OF EVIDENCE 403 ............................................................................. 26
    A.    Standard of Review ............................................................. 26
    B.    The Probative Value Of The Child Pornography Evidence Was Not Substantially Outweighed By The Danger Of Unfair Prejudice .................................................................. 27
    C.    Any Error In The District Court's Rule 403 Determination Was Harmless .................................................................... 35

Conclusion ............................................................................. 38

# TABLE OF AUTHORITIES

## Federal Cases

*Old Chief v. United States*, 519 U.S. 172 (1997).............................. 28, 29

*United States v. Armenteros-Chervoni*, 133 F.4th 8 (1st Cir. 2025). 26, 28

*United States v. Caldwell*, 586 F.3d 338 (5th Cir. 2009) ........................ 30

*United States v. Cunningham*, 694 F.3d 372 (3d Cir. 2012) ........... 29, 30

*United States v. DiRosa*, 761 F.3d 144 (1st Cir. 2014) .................... 27, 28

*United States v. Dudley*, 804 F.3d 506 (1st Cir. 2015) .................... 32, 33

*United States v. Eads*, 729 F.3d 769 (7th Cir. 2013) ............................. 32

*United States v. Morales-Aldahondo*, 524 F.3d 115 (1st Cir. 2008) 28, 31, 33

*United States v. Polanco*, 634 F.3d 39 (1st Cir. 2011) ..................... 26, 35

*United States v. Pérez-Vásquez*, 6 F.4th 180 (1st Cir. 2021) ................. 26

*United States v. Rivera-Carrasquillo*, 933 F.3d 33 (1st Cir. 2019) ........ 35

*United States v. Ross*, 837 F.3d 85 (1st Cir. 2016) ................ 9, 27, 32, 34

*United States v. Soler-Montalvo*, 44 F.4th 1 (1st Cir. 2022) ................. 35

*United States v. Tavares*, 21 F.3d 1 (1st Cir. 1994)............................... 31

*United States v. Vázquez Rijos*, 119 F.4th 94 (1st Cir. 2024)................ 35

*United States v. Wallace*, 461 F.3d 15 (1st Cir. 2006) ........................... 26

## Federal Statutes

18 U.S.C. § 2252A(a)(5)(B) ........................................................................ 1

18 U.S.C. § 2252A(b)(2) .............................................................................. 1

18 U.S.C. § 2256(8)(A) ................................................................ 1

## Federal Rules

Fed. R. Evid. 403 .......................................................... *passim*

Fed. R. Evid. 414 .............................................................. 37

**STATEMENT OF ISSUE PRESENTED**

I.    PRIOR TO KEVIN LEE ROSS'S JURY TRIAL, THE PARTIES STIPULATED THAT NINE EXHIBITS CONTAINED CHILD PORNOGRAPHY. DURING TRIAL, THE DISTRICT COURT PERMITTED THE GOVERNMENT TO PUBLISH THESE EXHIBITS OVER ROSS'S OBJECTION. THE DISTRICT COURT ALSO ALLOWED THE AGENT WHO PREPARED THESE EXHIBITS TO DESCRIBE THEM WITHOUT ANY OBJECTION FROM ROSS. DID THE DISTRICT COURT PROPERLY BALANCE THE COMPETING CONCERNS OF FEDERAL RULE OF EVIDENCE 403?

**STATEMENT OF THE CASE**

**A.    Procedural Overview**

A grand jury indicted Kevin Lee Ross for possessing three devices (a cell phone, a laptop, and an external hard drive) containing child pornography over the course of multiple years, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2256(8)(A). JA 17.[1] The indictment also furnished notice that Ross previously had been convicted of the same offense, which triggered the recidivist sentencing penalty for his current offense. JA 18.

In his trial brief,  defense counsel explained that "Mr. Ross intends to present a defense that the [g]overnment cannot rule out all the reasonable possibilities that [he] did not knowingly possess child pornography, or all the reasonable possibilities that someone other than [him] possessed the devices on which the child pornography was located." D 70 at 1.

---

[1]     Citations herein are as follows: matters on the district court's docket as "D [ECF #] at [pg#];" the parties' joint appendix as "JA [pg#];" the government's addendum as "G.Add. [pg#];" Defendant-Appellant's addendum as "D.Add. [pg#];"and Defendant-Appellant's opening brief as "D.Br. [pg#]."

Prior to trial, the parties jointly stipulated that "[g]overnment [e]xhibits 33-35, 44-46, and 50-52 are images produced by using an actual person under the age of eighteen engaging in sexually explicit conduct. These images of child pornography were produced using materials that have been mailed, shipped or transported in interstate or foreign commerce." D.Add. 11.

A two-day jury trial ensued, during which the joint stipulation was read aloud and admitted as a government exhibit. JA 317. Also admitted were six images and three videos depicting child pornography that were identified in the joint stipulation—government exhibits 33-35, 44-46, and 50-52. JA 277-80, 309-11, 314-16. In view of the joint stipulation, Ross objected during trial to the publication of these nine exhibits as unfairly prejudicial under Federal Rule of Evidence 403. *Id*. By contrast, Ross never raised any objection to the agent's testimony describing each image and video. *Id*.

Consistent with the defense identified in Ross's trial brief, defense counsel used his opening statement and closing argument to urge the jury to conclude that Ross could not be found guilty beyond a reasonable

doubt because it was possible that Ross's brother Scott[2] framed him

after a dispute about insurance money, and because it was possible that

Ross never touched the three devices containing child pornography. JA

41-48, 51, 362-67.

The jury returned a guilty verdict. JA 392-93, 400. The district

court (Walker, C.J.) sentenced Ross to 121 months' imprisonment to be

served consecutively to the revocation sentence he received in *United

States v. Ross*, 1:13-cr-00158. D.Add. 35. This appeal, which challenges

the district court's ruling about the child pornography exhibits under

Federal Rule of Evidence 403, followed. JA 401; D.Br. 30-39.

## B.    Trial Evidence

### 1.    *While Ross was on supervised release for possessing child pornography, three unauthorized devices were located in Ross's bedroom and vehicle during a probation search.*

This was not the first time that Ross was charged with, and

convicted of, possessing child pornography. JA 52-58. In 2014, Ross was

convicted of the same offense in *United States v. Ross*, 1:13-cr-00158, as

---

[2]    Two of Ross's three brothers testified at trial: Scott Ross and Mike
Ross. JA 90, 141-42, 194. To avoid confusion, the government refers to
Ross by his last name and to Ross's brothers by their first names.

a result of which he was sentenced to 90 months' imprisonment followed by 60 months' supervision. JA 54-56. Ross was incarcerated for his prior possession of child pornography offense between October 21, 2014, and April 8, 2021. JA 57.

After being released from federal prison, Ross began serving his term of supervised release, under the supervision of Probation Officer Ashley Hadam. JA 52-53. As part of his supervised release, Ross was required to comply with mandatory, standard, and special conditions. JA 56-57. One condition restricted Ross's access to the internet, monitored his usage of internet-capable devices and storage media, and required him to submit to searches of his devices by the probation office. JA 61. Another condition allowed Officer Hadam to search Ross's person, residence, vehicle, and belongings. JA 62.

On March 31, 2023, Officer Hadam received a phone call from Ross's brother Scott. JA 59. According to Scott, Ross had two cell phones, and Ross had been using marijuana. JA 59. Within days of Scott's phone call, Officer Hadam obtained approval to conduct a probation search of Ross. JA 59, 63. At the time, Ross and his brothers were renting a house in Ellsworth, Maine. JA 63, 91, 109.

Officer Hadam, accompanied by Probation Officers Bryce Turgeon and Gian Zucchi, traveled to Ross's residence to conduct the probation search on April 5, 2023. JA 63-64. Upon arrival, Officer Hadam waited in the living room with Ross and his brother Mike. JA 64. Officer Zucchi performed a pat down search of Ross and located the one cell phone that Ross had been approved to use by the probation office. JA 99, 104-05.

Officer Turgeon searched Ross's bedroom. JA 64, 109. During the search of Ross's bedroom, Officer Turgeon located a second cell phone in a trash bag, along with marijuana and drug paraphernalia in a bag in the closet. JA 64-65, 105, 109-10. While inventorying the items he recovered from Ross's bedroom, Officer Turgeon powered on the cell phone and placed it into airplane mode. JA 105, 111. After powering on the cell phone, Officer Turgeon saw an image of a prepubescent girl with her legs open and what appeared to be semen covering her vagina. JA 111. When asked, Ross admitted that the marijuana and drug paraphernalia belonged to him, but he denied that the cell phone belonged to him. JA 66-67, 100.

Ross also provided the keys to his vehicle—a Toyota Corolla—in order for Officer Zucchi to search it. JA 67. During the search of Ross's

vehicle, Officer Zucchi found a laptop and an external hard drive inside of a computer bag with a trash bag wrapped around it located in the spare tire compartment inside the trunk of Ross's vehicle. JA 67-68, 131-33. Ross denied that the computer bag belonged to him. JA 68.

Following the completion of the probation search, the cell phone, laptop, and external hard drive were provided to Special Agent Greg Kelly with Homeland Security Investigations in order for Agent Kelly to conduct a forensic examination of all three devices. JA 227.

### 2. *The forensic examination of the three devices reveals over one thousand child pornography files, only nine of which are introduced at trial.*

Agent Kelly's forensic examination of the three unapproved devices that were recovered from Ross's bedroom and vehicle during the probation search revealed a large volume of child pornography: (1) the cell phone contained over 500 files of child pornography; (2) the laptop contained over 180 files of child pornography; and (3) the external hard drive contained over 700 files of child pornography. JA 231-32, 282, 312. Of the more than 1,380 total files of child pornography that Agent Kelly identified across the three devices, the government sought to introduce only nine files (two still images and one video clip from each device),

consistent with the nine government exhibits identified in the joint stipulation. D.Add. 11; JA 277-80, 309-11, 314-17.

Beginning with the three representative files from the cell phone, Agent Kelly testified that he selected government exhibits 33, 34, and 35 from among the hundreds of images and videos depicting children engaged in sexually explicit conduct on the cell phone. JA 277. When the prosecutor moved to admit government exhibits 33, 34, and 35, defense counsel objected "to them being shown" in view of the joint stipulation that "they are child pornography[.]" JA 277.

The prosecutor responded that the admission and publication of these exhibits was "appropriate" because "there are hundreds of images and videos of child pornography on here[,]" and because "[t]he government has very conservatively picked two images and one video" from each device with the intent of showing the jury each image "briefly[,]" along with each "not very long" video clip. JA 277-78. The district court asked defense counsel to specify, "[w]hat's the basis of the objection[,]" and defense counsel replied, "[w]e're willing to stipulate or we do stipulate that it is child pornography, so showing it to the jury could only potentially, I guess, inflate passions and prejudices." JA 278.

The district court overruled Ross's objection:

> So, uncharacteristically helpful, the First Circuit has ruled on this particular issue in a case by the name of Kevin Lee Ross -- *United States versus Kevin Lee Ross* in which it has said that: a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it, so long as it meets basic relevance and is [sic] unfairly prejudicial. Okay. Overruled.

JA 278.

The government published government exhibits 33, 34, and 35, and the prosecutor asked Agent Kelly to describe each exhibit in turn. JA 278-81. Agent Kelly testified that government exhibit 33 was an image depicting "a small female child, probably under five years of age, lying on her back completely naked with what appears to be ejaculate on her torso. And you can see in the frame an adult's hand and the erect penis of an adult male." JA 278-79. Agent Kelly also testified that government exhibit 34 was another image in the form of "a GIF of a prepubescent child, female, forced to perform oral sex on an adult male until he ejaculates into her mouth." JA 279. Additionally, Agent Kelly testified that government exhibit 35 was a three-second clip from a longer video file that was approximately 40 seconds in duration depicting "a minor female child, probably no more than five years of

age, forced to perform oral sex on an adult male."[3] JA 280. Ross did not voice any contemporaneous objections to Agent Kelly's descriptions of government exhibits 33, 34, or 35. JA 278-80.

Before the jury entered the courtroom on the second day of trial, the district court elaborated on its prior evidentiary ruling regarding the first three child pornography exhibits. JA 290-94. As the district court noted, "the leading authority" on this issue was the First Circuit's decision on appeal following Ross's previous conviction for possessing child pornography in *United States v. Ross*, 837 F.3d 85 (1st Cir. 2016). JA 291. Noting the facts of Ross's prior case were "strictly similar" to the facts of his current case, the court explained, "the exact same objection came up at [Ross's prior] trial after the parties stipulated that computers contained child pornography and the government sought, nevertheless, to introduce images and videos of child pornography into evidence." JA 291.

Turning to Ross's objection in his current case, the district court noted that "[y]esterday, Mr. Ross did not argue that the photographs

---

[3] Prior to publication, the prosecutor advised that he was not going play the audio component of the video file. JA 279.

and video selected by the government from the cell phone misrepresented the totality of what was found on that device, and Mr. Ross has not asked that I view the evidence in advance of ruling on his objection." JA 292. But even if the court had viewed the first three child pornography exhibits before resolving on Ross's objection, the court noted, it would have admitted government exhibits 33, 34, and 35 and permitted the government to publish them for two reasons. JA 292.

First, the court reasoned that the child pornography exhibits were "relevant even though the parties have stipulated that the cell phone contain[s] images of child pornography." JA 292-93. "Mr. Ross's defense in his previous trial was that someone else used the devices and downloaded child pornography. In essence, Mr. Ross's previous trial, like this one, was a 'who-done-it' case." JA 293. As a result, the joint stipulation only went so far because "[a]s in his previous trial, Mr. Ross has not stipulated to knowing that a device contained images of child pornography." JA 293. Because Ross's knowledge was at issue then and is at issue now, "the First Circuit's rationale as to why the child pornography remains relevant despite the stipulation applies with equal force to this case." JA 293.

Second, the court explained that the child pornography exhibits were relevant "to whether Mr. Ross knew that the cell phone contained images of child pornography, which is one of the central issues in this case[.]" JA 294. Even though Ross was willing to stipulate to one "critical fact," Ross could not "stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it[.]" JA 294. Considering the relevance of the images and video "as well as the government's selected presentation of a very limited portion of what was found on the cell phone," the court reasoned that "the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice." JA 294.

After providing this additional explanation for its evidentiary ruling, the district court asked defense counsel whether Ross was requesting that the court view the other child pornography exhibits in advance, and defense counsel responded, "[n]o, we're not asking for that, your Honor. I understand your ruling." JA 294. The jury then entered the courtroom, and the government continued with its direct examination of Agent Kelly. JA 294-95.

As to the forensic examination of the laptop, Agent Kelly confirmed that he had identified approximately 50 images and 138 videos containing child pornography from the laptop's hard drive. JA 282, 309. Agent Kelly likewise confirmed that government exhibits 44, 45, and 46 were three child pornography files found on the laptop, including two still images and one video clip. JA 309-11. When the prosecutor moved to admit these exhibits, defense counsel stated, "[s]ame objection as yesterday[,]" to which the district court responded, "[s]ame ruling; they're admitted." JA 310.

The government published government exhibits 44, 45, and 46, and the prosecutor asked Agent Kelly to describe each exhibit in turn. JA 310-11. Agent Kelly testified that government exhibit 44 was an image depicting "a prepubescent girl, naked, lying on her back with her legs spread, her vulva clearly visible, with the erect penis of an adult male in the foreground of the frame." JA 310. Agent Kelly also testified that government exhibit 45 was an image depicting "a prepubescent girl, standing up naked with stockings on and nothing else. There appears to be an adult female spreading the child's vulva." JA 311. Additionally, Agent Kelly testified that government exhibit 46 was a

three- or four-second clip from a longer video file that was approximately 43 seconds in duration depicting "a prepubescent child with an adult male attempting to force his erect penis into the child." JA 311. Again, Ross did not lodge any objections to Agent Kelly's testimony describing government exhibits 43, 44, or 45. JA 310-11.

As to the forensic examination of the external hard drive, Agent Kelly explained that he had identified approximately 643 images and 118 videos containing child pornography on the external hard drive. JA 312. Agent Kelly also explained that government exhibits 50, 51, and 52 were three representative child pornography files that were recovered from the external hard drive, including two still images and one video clip. JA 314-15. When the prosecutor sought to admit these exhibits, defense counsel stated, "[s]ame objection, your Honor[,]" to which the district court responded, "[s]ame ruling; they're admitted." JA 315.

The government published government exhibits 50, 51, and 52, and Agent Kelly described each exhibit in turn. JA 315-16. Agent Kelly testified that government exhibit 50 depicted "a prepubescent girl forced to perform sex on an adult male." JA 315. Agent Kelly further testified that government exhibit 51 depicted "a prepubescent girl who

still appears to be in a car seat with an adult male ejaculating on her face." JA 315. Additionally, Agent Kelly testified that government exhibit 52 was a five- or six-second clip from a longer video file that was approximately 42 seconds in duration entitled "PTHC Kitty 4YO3"[4] depicting "a very young girl, probably under 5 years of age or approximately 5 years of age forced to perform oral sex on an adult male." JA 316. Yet again, Ross did not voice any objections to Agent Kelly's testimony describing government exhibits 50, 51, or 52. JA 315-16.

> ### 3. *The forensic examination of the three devices, along with other evidence introduced at trial, establishes that Ross used the devices containing child pornography for years.*

Agent Kelly also testified about the ways in which his forensic examination of the cell phone not only revealed that "somebody had actively searched for -- that this wasn't an accident that somebody searched for and used the internet to search for the CSAM[5] that was

---

[4]    Agent Kelly testified that "PTHC" refers to preteen hardcore, and "4YO" refers to someone who is 4 years of age. JA 240, 316.

[5]    Agent Kelly testified that "CSAM" refers to child sexual abuse material. JA 231-32.

found on the device[,]" but it also revealed that "the device was associated with someone named Kevin Ross." JA 232. Among other evidence located on the cell phone, Agent Kelly's forensic examination identified:

- More than 500 images and videos of children engaged in sexually explicit conduct that were accessed or modified between August 2022 and March 2023 and that were readily accessible in the photo gallery of the cell phone. JA 232, 256-61, 277.

- Searches for terms typically associated with child pornography, such as "[p]reteen pussy," "PTHC," and "kinder porn," that occurred between August 2022 and March 2023. JA 239-42.

- Bookmarks for websites with depictions of child pornography or preteens modeling underwear  that were added between September 2022 and January 2023. JA 242-44, 254-55.

- Multiple selfie-style photographs of Ross that were accessed between October 2022 and March 2023. JA 234-38.

- Multiple autofill entries on browsers containing some version of Ross's name, Ross's prior residential address, passwords using Ross's date of birth, and the telephone number associated with the cell phone, all of which were created between January 2022 and March 2023. JA 244-46, 248-54, 256.

- Different types of communications—instant messages, text messages, emails, and social media conversations—between "Kevin" and multiple other parties about various topics between April 2022 and March 2023.[6] JA 270-76.

---

[6]     For example, Agent Kelly identified emails to a specific email address containing Ross's middle and last names about a reservation

- Amazon recognizing the cell phone as "Kevin's Android device." JA 261-62.

- Multiple searches over multiple months on the cell phone related to Ross's other interests, including gardening and motorcycles, interspersed with someone using the cell phone to seek, access, and download child pornography from websites with names like "first time porn, first sex for young beauties" and "lolita preteen models 2022." JA 265-69.

Indeed, Agent Kelly created 11 spreadsheets, along with one color-coded timeline combining all the information that he found on the cell phone in chronological order, to summarize the results of his forensic examination of the cell phone for the jury. JA 21-22, 233-34, 256, 258, 260, 262.

Agent Kelly next discussed his forensic examination of the laptop and the eight spreadsheets that he created to summarize all the information he found on the laptop. JA 22-23, 282-84, 295-311. Agent Kelly explained that the laptop held 50 images and 138 videos containing child pornography, most of which were created on the laptop in 2013 or 2014. JA 282, 296-97. He further explained that someone

_____

that was made for "Kevin Ross" to stay at the Queen City Inn in Bangor, Maine in March 2023. JA 276. At trial, an employee of the Queen City Inn testified about the documents associated with this March 2023 reservation, which indicated that the guest registered Ross's vehicle and provided Ross's license upon arrival. JA 215-18.

used the Shareaza peer-to-peer file sharing program to search for "PTHC" and that the downloaded files contained both images and videos with file names indicative of child pornography, such as "2011 PTHC Falko Awesome, 7YO and 8YO child porn (34).jpeg" and "(pthc pedo) Kids porno - clip collection.avi." JA 283-84, 295-96, 298. In addition, Agent Kelly noted that there was a prolonged break in activity on the laptop from September 2014 to January 2022, during which time no further depictions of child pornography were added to the laptop. JA 299-301. Finally, Agent Kelly testified about how the laptop had been linked to the external hard drive to access child pornography files numerous times, with the exception of a multiyear break. JA 301-05. More specifically, no one powered on the laptop between October 2014 and April 2021, which mirrored Ross's period of federal incarceration following his prior conviction for possessing child pornography. JA 57, 308-09.

Following Ross's release from federal custody in April 2021, someone began using the laptop's GOM media player to access child pornography videos, and someone continued using the laptop's GOM media player to access child pornography videos through February

2023. JA 57, 305-06. According to Agent Kelly, there also was evidence of connectivity among all three devices. JA 307. Indeed, the external hard drive was last connected to the laptop on in December 2021, and the cell phone was last connected to the laptop in August 2022. JA 307.

Agent Kelly next testified about the result of his forensic examination of the external hard drive. JA 312-16. The external hard drive included 643 images and 118 videos containing child pornography. JA 312. Agent Kelly prepared two spreadsheets for the child pornography images and the child pornography videos, none of which had been created after 2014. JA 312-14.

Of course, Agent Kelly and the three officers who conducted the probation search were not the government's only witnesses. JA 20. Ross's brother Scott confirmed that Ross was "the primary driver" of the Toyota Corolla. JA 147-48. Scott did not know anything about the devices found in the trunk of Ross's vehicle "until my brother called me after the home search." JA 149. When asked whether he had ever downloaded child pornography onto the laptop and the external hard drive, Scott responded, "I never even knew that laptop existed." JA 192.

Scott did know about the cell phone that was found in Ross's bedroom, but Scott said that he had never used this cell phone for any reason, including to download or view child pornography. JA 151. As to the cell phone found in Ross's bedroom, Scott unequivocally denied that he had ever (1) used this cell phone to impersonate Ross; (2) searched for child pornography on this cell phone; (3) downloaded child pornography on this cell phone; and (4) remotely accessed this cell phone to upload child pornography or to impersonate Ross. JA 193. As to his ability to access a cell phone remotely, Scott said, "I wouldn't even know how to do that." JA 193.

Scott also shared with the jury how he stored Ross's contact information in his cell phone as well as several screenshots of messages that were exchanged between his cell phone and Ross's cell phone. JA 152-55. Additionally, Scott said that Ross had "quite a bit" of interest in gardening and that Ross recently purchased a Harley Davidson motorcycle. JA 156-58. Finally, Scott acknowledged that he and Ross were arguing about their living arrangements in March 2023, which culminated in Scott pulling an unloaded gun on Ross, but Scott denied

that the two men were having ongoing disputes about the insurance money until after their argument in March 2023. JA 158-61, 166-67.

Similar to Scott's testimony, Ross's brother Mike testified that Ross was the primary user of the Toyota Corolla, referring to this vehicle as "Kevin's car." JA 198. Mike had never seen the computer bag, the laptop, or the external hard drive before the probation search of the vehicle. JA 199. Mike admitted that he was not technologically savvy, and he denied ever using either the laptop or the external hard drive or remotely accessing either device. JA 199-01. Mike also confirmed that he had never used the cell phone that was recovered from Ross's bedroom for any reason, including to search for child pornography. JA 197-98. When asked whether he had ever remotely accessed this cell phone, Mike responded that he did not know how to do that. JA 198. In addition, Mike confirmed Ross's interests included gardening and Harley Davidson motorcycles. JA 202.

> **4.** ***Ross holds the government to its burden of establishing both that he knowingly possessed the three devices and that he knew that the three devices contained images of child pornography.***

During his opening statement, defense counsel highlighted two reasonable doubts that the government needed to overcome in order for

the jury to return a guilty verdict. JA 41-42. "The first reasonable doubt that the prosecutor and I agree that you must rule out as a possibility during this trial is, one, maybe Kevin was set up." JA 41. "The second reasonable doubt that the prosecutor and I agree that you must rule out during the course of this trial is that maybe Kevin never used the devices[.]" JA 42.

Defense counsel suggested that the jury was going to hear that between February 2023 and March 2023, Ross's brother Scott became increasingly angry with Ross about the management of the insurance money that the brothers received following a fire at a previous shared residence, which led to Scott contacting Ross's probation officer and claiming Ross "has a phone he's not supposed to have." JA 42-45. In defense counsel's framing, Scott wanted Ross arrested to take control of the insurance money, the brothers' living situation, and Ross's vehicle, which resulted in Ross possibly being "set up" to take the fall for the unauthorized devices found in his bedroom and his vehicle during the probation search. JA 44-45.

Defense counsel also suggested that "Kevin never touched or . . . used the devices that have child pornography on them." JA 46. As

defense counsel claimed, "we all know that nowadays anyone can pretend to be someone else online[,]" and it was possible that someone else had used the devices to impersonate Ross. JA 46. In this regard, defense counsel emphasized that the jury would not hear any evidence from the government about fingerprints or DNA to establish who actually was touching these devices. JA 47-48. "Remember, it's the prosecutor's job not just to show you it's one possible way it could have happened, but to rule out any reasonable possibilities that it wasn't Kevin or, in other words, to rule out that maybe Kevin never used those devices." JA 48.

Defense counsel concluded his opening statement by emphasizing the following:

> And at the end of the case, I will point out and suggest to you the different reasonable doubts that the government hasn't ruled out. And if you agree, in the end and find there's a doubt, no matter how small, if it's based on the reason that Kevin was set up, that Kevin never touched these devices, or any other reasonable doubts you think of, then the decision has been made, and you would vote not guilty.

JA 51.

Defense counsel reiterated many of these same points during his closing argument. JA 360-71. According to defense counsel, one of the

jury's jobs was to vote on "whether the prosecutor, the government has ruled out every other reasonable possibility, no matter how small, that maybe Kevin did not do this." JA 361. Defense counsel argued that the government had not ruled out the reasonable possibility that "Kevin was set up by his brother Scott." JA 362. Defense counsel hypothesized:

> For all we know[,] Scott could have had this phone since whenever he bought it, he said he bought it. . . . He could have had this phone since 2022. For all we know, Scott could have been interested in child pornography. For all we know, Scott could have been pretending to be Kevin online. And then for all we know, when Scott just had enough of Kevin and he wanted to set him up and get rid of him, what's he do[?] [H]e calls the probation officer, says, oh Kevin has this phone, you better go look for it.

JA 363. In defense counsel's view, "[t]here's so much evidence on this phone that it's so easy to find that you might think that maybe it just had to be a set up." JA 363.

Defense counsel also argued that the government had not ruled out the reasonable possibility that Ross never touched or used the cell phone. JA 364. According to defense counsel, the government never bothered to do "simple things" during its investigation to check whether Ross was, in fact, the victim of a "catfish" scheme, such as checking for fingerprint or DNA evidence on the cell phone or comparing the

contents on Ross's approved cell phone with the contents on the

unapproved cell phone. JA 365-66. In defense counsel's view, the jury

could determine that "digital evidence[] can be faked or we don't know

who put that digital evidence on there, but you can't fake DNA evidence

or fingerprint evidence." JA 367.

Finally, defense counsel urged the jury to consider the fact that

Ross was "an easy target" because of his prior conviction and the fact

that "[i]f someone wanted to set him up, it's pretty easy to potentially

set him up." JA 367.

## SUMMARY OF THE ARGUMENTS

On appeal, Ross claims that the district court committed reversible error under Federal Rule of Evidence 403 by permitting the publication of nine child pornography exhibits and by allowing Agent Kelly to describe each exhibit in turn. D.Br. 30-39. Ross's partially preserved evidentiary challenge lacks merit. As to the preserved aspect of Ross's challenge, the district court did not abuse its discretion by permitting the publication of six still images and three video clips containing child pornography. As to the unpreserved aspect of Ross's challenge, the district court did not err, plainly or otherwise, in permitting Agent Kelly to describe what the exhibits depicted. Assuming for the sake of argument that Ross could establish a Rule 403 error, which the government in no way concedes, any error was harmless because there was an overwhelming amount of other evidence to establish Ross's guilt beyond a reasonable doubt.

# ARGUMENTS

## I. THE DISTRICT COURT PROPERLY BALANCED THE COMPETING CONCERNS OF FEDERAL RULE OF EVIDENCE 403.

### A. Standard Of Review

The first part of Ross's evidentiary challenge on appeal—the district court misapplied Rule 403 by permitting the jury to view nine child pornography exhibits—was preserved by Ross's continued objection to these exhibits "being shown" to the jury at trial. *See* JA 277-81, 309-11, 314-16. The second part of Ross's evidentiary challenge on appeal—the district court misapplied Rule 403 by permitting the jury to hear Agent Kelly describe these exhibits—was not an issue that Ross ever raised with the district court. *See id*. Therefore, Ross's claim is preserved in part and unpreserved in part.

This Court reviews properly preserved evidentiary objections for abuse of discretion. *United States v. Armenteros-Chervoni*, 133 F.4th 8, 27 (1st Cir. 2025); *United States v. Polanco*, 634 F.3d 39, 44 (1st Cir. 2011). Unpreserved evidentiary objections are reviewed for plain error. *United States v. Pérez-Vásquez*, 6 F.4th 180, 202 (1st Cir. 2021); *United States v. Wallace*, 461 F.3d 15, 28 (1st Cir. 2006).

**B.    The Probative Value Of The Child Pornography Evidence Was Not Substantially Outweighed By The Danger Of Unfair Prejudice.**

According to Ross, the district court ran afoul of Federal Rule of Evidence 403 by allowing the jury to see nine child pornography exhibits and to hear Agent Kelly's description of these nine exhibits. D.Br. 20-39. In view of the joint stipulation, Ross alleges that the child pornography evidence lacked probative value and that he was unfairly prejudiced by its admission because the child pornography evidence "had an undue tendency to suggest the jury condemn him based on their disgust instead of being convinced that he possessed the images." *Id.* at 38-39. Ross further alleges that the district court "misapplied" this Court's decision in *United States v. Ross*, 837 F.3d 85 (1st Cir. 2016). *Id.* at 38. Ross's evidentiary challenge misses the mark.

Under Federal Rule of Evidence 403, a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" Fed. R. Evid. 403. "Unfair prejudice 'speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" *United States v. DiRosa*, 761 F.3d 144, 153 (1st

Cir. 2014) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). "In balancing the scales of Rule 403, it is important to note that only unfair prejudice is to be avoided, as by design, all evidence is meant to be prejudicial." *United States v. Morales-Aldahondo*, 524 F.3d 115, 119-20 (1st Cir. 2008) (cleaned up). It is also important to note that the district court is "afforded especially wide latitude in making Rule 403 determinations, which are disturbed only rarely—and in extraordinarily compelling circumstances." *Armenteros-Chervoni*, 133 F.4th at 28 (cleaned up).

Ross does not come close to identifying "extraordinarily compelling circumstances" that would warrant second-guessing the district court's Rule 403 determination on appeal. *Id*. While it is true that the parties entered into a joint stipulation about nine government exhibits containing child pornography,[7] the existence of this joint stipulation does not inevitably tip the scales from probative to unfairly prejudicial.

---

[7]     The parties' joint stipulation provided: "[g]overnment [e]xhibits 33-35, 44-46, and 50-52 are images produced by using an actual person under the age of eighteen engaging in sexually explicit conduct. These images of child pornography were produced using materials that have been mailed, shipped or transported in interstate or foreign commerce." D.Add. 11.

To the contrary, letting the jury see the child pornography exhibits and hear Agent Kelly's description of them was highly probative in two important respects.

First, the child pornography evidence was probative of the fact that all three devices specified in the indictment (the cell phone, the laptop, and the external hard drive) actually "contained an image of child pornography" as charged in the indictment. JA 17. This evidence also provided the jury with a representative sample of the types of child pornography featuring prepubescent girls that consistently was found across all three devices over multiple years.

Although the parties stipulated that nine government exhibits met the legal definition of child pornography, the government generally "is entitled to prove its case by evidence of its own choice," and the defendant "may not stipulate or admit his way out of the full evidentiary force of the case as the [g]overnment chooses to present it." *Old Chief*, 519 U.S. at 186-87. In cases involving child pornography, it cannot be said that a joint stipulation about the content of the images and videos has "substantially the same or greater probative value" as the images and videos themselves. *Id.* at 182-83. *See United States v.*

*Cunningham*, 694 F.3d 372, 389 (3d Cir. 2012) (stating "the agreed upon stipulation obviously falls far short of the evidentiary impact made by the video excerpts the government wanted to present"); *United States v. Caldwell*, 586 F.3d 338, 343 (5th Cir. 2009) (noting "[t]he general, conclusory language of the stipulation that the videos 'contain visual depictions of minors under the age of eighteen, engaging in sexually explicit conduct' does not have the same evidentiary value as actually seeing the particular explicit conduct of the specific minors").

Here, the child pornography was one part of the overall evidence that the government selected to prove its case against Ross, and the joint stipulation was not an adequate substitute for the government's chosen evidence. Of the more than 1,380 files containing child pornography found on Ross's three devices, the district court permitted the jury to see six still images and three brief video clips containing child pornography (two still images and one video clip from each device) and to hear Agent Kelly succinctly describe each exhibit. JA 277-81, 309-11, 314-16. Collectively, the video clips that were played for the jury were less than 15 seconds in duration. JA 280, 311, 316.

This Court in *Morales-Aldahondo* concluded that the district court did not reversibly err when it allowed the government to introduce 12 images (out of over 100) and 10 video clips (out of 18) containing child pornography. *Morales-Aldahondo*, 524 F.3d at 119-20. In so doing, this Court considered and rejected the defendant's argument that the introduction of the child pornography images was unfairly prejudicial because "his offer to stipulate to the fact that the images met the legal definition of pornography obviated the government's need to introduce any of them." *Id.* at 120. As this Court explained, "[t]he government need not accept a defendant's attempt to use a stipulation to overcome the right of the government 'to make a full presentation of the crime currently charged.'" *Id.* (quoting *United States v. Tavares*, 21 F.3d 1, 3 (1st Cir. 1994). Although the child pornography images "undoubtedly had an emotional impact on jurors, the court properly balanced the competing concerns of Rule 403 by limiting the number of images presented." *Id.* So too here.

Second, the child pornography evidence was probative of whether Ross knew the devices contained images of child pornography. The joint stipulation did not relieve the government of its burden of proving

Ross's knowledge beyond a reasonable doubt. Ross's defense at trial was that he was framed by his brother Scott and that he never touched any of the devices containing child pornography. JA 41-48, 51, 362-67. Because Ross consistently argued to the jury that he was not in *knowing* possession of child pornography, the parties' joint stipulation "only went so far." *United States v. Dudley*, 804 F.3d 506, 517 (1st Cir. 2015). *See also United States v. Eads*, 729 F.3d 769, 778 (7th Cir. 2013) ("A stipulation about the content of charged images only goes so far if it is silent with respect to the defendant's knowledge of the images in his possession."). "And, because knowledge was contested, the [g]overnment's evidence 'served a valid, non-cumulative, purpose.'" *Ross*, 837 F.3d at 91 (quoting *Eads*, 729 F.3d at 778).

Consistent with this Court's decisions in *Ross* and *Dudley*, the child pornography exhibits in this case demonstrated that anyone who possessed the cell phone, laptop, and external hard drive for any length of time would immediately recognize that these devices were full of readily accessible child pornography, making it more probable that Ross knowingly possessed child pornography if he possessed and used these devices for years. *See Ross*, 837 F.3d at 91 (explaining "[t]he

[g]overnment's limited use of three videos and six images, among the many thousands of videos and images on [the defendant's] devices, demonstrated that [the defendant] could not have somehow stumbled upon these items without immediately recognizing their graphic content"); *Dudley*, 804 F.3d at 517 (reasoning that the child pornography videos "provided evidence that anyone who played those files for just thirty seconds . . . would have known that the videos contained child pornography, thus making it more probable that [the defendant] knowingly possessed child pornography").

To be sure, permitting the jury to see six still images and three brief video clips of child pornography and to hear Agent Kelly's describe these nine exhibits was prejudicial to Ross, but it was not *unfairly* prejudicial to Ross. While the district court's job is "to avoid unfair prejudice," the district court is "not required to scrub the trial clean of all evidence that may have an emotional impact, where the evidence is part of the government's narrative." *Morales-Aldahondo*, 524 F.3d at 120 (cleaned up). Here, the district court appropriately analyzed the probative value of the child pornography evidence against the risk of

unfair prejudice, and the district court correctly concluded that the child pornography exhibits were admissible. JA 278, 290-94.

Additionally, Ross claims that the district court "misapplied" *United States v. Ross*, 837 F.3d 85, 90 (1st Cir. 2016), which is this Court's decision on appeal following Ross's previous conviction for possession of child pornography, "because that case involved a proposed stipulation," rather than an actual stipulation. D.Br. 38. It appears that Ross misremembers his first jury trial. Review of the trial transcript from Ross's first jury trial for possession of child pornography establishes that the parties entered into another joint stipulation that was read aloud and introduced as a government exhibit. G.Add. 2-3. Specifically, the parties in Ross's first trial stipulated: "The images contained in [g]overnment [e]xhibits 42, 43, 44, 45, 46, 47, and 48 contain visual depictions of actual minors under the age of 18. These visual depictions had been shipped or transported in interstate or foreign commerce by any means, including by computer." G.Add. 2. Accordingly, Ross's attempt to distinguish his current case from his previous case on the basis that one involved a proposed stipulation and the other involved an actual stipulation is altogether unavailing.

"It is a pretty '[r]are[]' day when [this Court] will 'override a judge's balancing of relevance and prejudice.'" *United States v. Vázquez Rijos*, 119 F.4th 94, 107 (1st Cir. 2024) (quoting *Polanco*, 634 F.3d at 44). Because Ross offers no compelling reason to question the district court's Rule 403 determination, today is not that day.

### C. Any Error In The District Court's Rule 403 Determination Was Harmless.

Assuming for the sake of argument that the district court erred in admitting the challenged child pornography evidence, any error was harmless. "Non-constitutional errors in admitting or excluding evidence are harmless unless the evidence likely affected the trial's outcome." *United States v. Soler-Montalvo*, 44 F.4th 1, 19 (1st Cir. 2022) (cleaned up). This Court will not reverse "if we can say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the errors did not substantially sway the jury's verdict." *United States v. Rivera-Carrasquillo*, 933 F.3d 33, 46-47 (1st Cir. 2019) (cleaned up).

There is no indication in the record that the district court's admission of the disputed child pornography evidence affected the outcome of Ross's trial in any way. To convict Ross of possessing child

pornography, the district court instructed that the jury had to find the following four elements beyond a reasonable doubt: (1) Ross "knowingly possessed the material[,]" meaning the cell phone, laptop, and external hard drive specified in the indictment; (2) "the material contained at least one image of child pornography[;]" (3) Ross "knew the material contained at least one image of child pornography[;]" and (4) "the image of child pornography was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce." JA 384. In light of Ross's defense, the key issues for the jury to resolve were the first and third elements. D 70 at 1; JA 41-48, 51, 362-67.

Even without the challenged child pornography evidence, the government presented overwhelming proof of Ross's guilt at trial. Turning first to whether Ross knowingly possessed the three devices, the testifying probation officers explained how these three devices were recovered from Ross's bedroom and vehicle during a probation search that they conducted after Ross was released from prison for his prior conviction for possessing child pornography and was completing his term of supervised release. Ross's two brothers both recognized the cell phone that was recovered from Ross's bedroom as belonging to Ross.

Ross's two brothers also reported that they had no previous knowledge of the laptop or the external hard drive hidden in the trunk of Ross's vehicle. And review of the laptop's event log confirmed that it was being used until one day before Ross went to prison, at which point it was not used again for years until one day after Ross was released from prison. Agent Kelly also detailed the circumstances surrounding when and how the cell phone and the external hard drive were connected to the laptop.

Turning next to whether Ross knew the devices contained at least one image of child pornography, the government presented plentiful evidence to satisfy this element primarily in the form of Agent Kelly's extensive testimony about the results of his forensic examination of the cell phone, laptop, and external hard drive. Setting aside Agent Kelly's succinct description of the nine child pornography exhibits, Agent Kelly provided the jury with a comprehensive description of how the user of these devices—who coincidently shared Ross's interests in gardening and Harley Davidson motorcycles and continuously communicated with multiple other parties on multiple other platforms as "Kevin"—also had searched using keywords typical for someone seeking child sexual abuse material and proceeded to download, bookmark, view, and create an

extensive child pornography collection. In addition to this compelling digital evidence, the jury heard about Ross's prior conviction for possessing child pornography under Federal Rule of Evidence 414.

In view of the collective strength of the other evidence admitted at trial, even if there was an error in the district court's Rule 403 determination, it was a harmless one.

## CONCLUSION

For the above-stated reasons, the judgment below should be affirmed.

Respectfully submitted,

CRAIG M. WOLFF
Acting United States Attorney

/s/ Lindsay B. Feinberg
Lindsay B. Feinberg
Assistant U.S. Attorney

Dated: May 12, 2025

# United States Court of Appeals

## FOR THE FIRST CIRCUIT

### CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS

CA No. 24-1907

UNITED STATES

v.

KEVIN LEE ROSS

TO BE INCLUDED IMMEDIATELY BEFORE THE
CERTIFICATE OF SERVICE FOR ALL BRIEFS FILED IN THIS COURT

1.    This brief has been prepared using (SELECT AND COMPLETE ONLY ONE):

>   14 point, proportionally spaced, serif typeface (such as CG Times or Times New Roman). Specify software name and version, typeface name, and point size below (for example, Wordperfect 8, CG Times, 14 point):
>   <u>Century Schoolbook , 14 pt</u>

>   10 1/2 characters per inch, monospaced typeface (such as Courier or Courier New). Specify software name and version, typeface name, and characters per inch below (for example, Wordperfect 8, Courier, 10 1/2 CPI):

2.    EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; addendum; and the certificate of service, the brief contains (SELECT AND COMPLETE ONLY ONE):

>   ❏    _____ Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief); OR

>   ☒    7,535 Words (give specific number of words; may not exceed 13,000 words for opening or answering brief or 7,000 for reply brief); OR

>   ❏    _____ Lines of Mono spaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation can result in the Court striking the brief or imposing sanctions. If the Court so directs, I will provide a copy of the word or line print-out.

<u>/s/ Lindsay Feinberg</u>
Signature of Filing Party

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2025, I electronically filed the

Brief of Appellee United States with the Clerk of Court using the

CM/ECF system, which will send notification of such filing to the

following counsel of record:

William L. Welch, III
5305 Village Center Drive, Suite 142
Columbia, Maryland 21044.

/s/ Brandon Pofahl
Paralegal Specialist

U.S. v. KEVIN LEE ROSS

ADDENDUM

## ADDENDUM INDEX

Excerpt from trial transcript in 1:13-cr-00158-LEW................... G.Add. 1-3

1                    UNITED STATES DISTRICT COURT

2                         DISTRICT OF MAINE

3

4      UNITED STATES OF AMERICA    )
                                   )
5                                  )          CRIMINAL ACTION
              vs.                  )
6                                  )    Docket No. 1:13-cr-00158-JAW-1
                                   )
7      KEVIN LEE ROSS,             )             JURY TRIAL
                                   )
8                   Defendant.     )

9

10                          VOLUME I OF II

11                     TRANSCRIPT OF PROCEEDINGS

12          Pursuant to notice, the above-entitled matter came on

13     for JURY TRIAL before the HONORABLE JOHN A. WOODCOCK, JR.,

14     Chief District Judge, in the United States District Court,

15     Bangor, Maine, on the 20th day of October, 2014, at 8:37 a.m.

16

17

18     APPEARANCES:

19     For the Government:               Andrew McCormack, Esquire

20     For the Defendant:               Hunter J. Tzovarras, Esquire

21

22

23                      Julie G. Edgecomb, RMR, CRR
                          Official Court Reporter

24

25     Proceedings recorded by mechanical stenography; transcript
       produced by computer.

SCICHILONE - CONTINUED DIRECT EXAMINATION/McCORMACK

178

04:48:38   1   A       Again, I found, I believe, over 6,000 images of what

04:48:42   2   appeared to be young females under the -- under the age of 18

04:48:44   3   performing sexual acts or posing in a sexual manner.  In

04:48:47   4   addition, I -- in addition, I found over 200 videos of similar

04:48:54   5   contact of children under the age of 18 who are -- are

04:48:57   6   engaging in sexual activities with adult males or posing.

04:49:00   7           MR. McCORMACK:  Your Honor, at this time, the

04:49:02   8   government would like to read a stipulation.

04:49:05   9           THE COURT:  Which one?

04:49:07   10          MR. McCORMACK:  Government Exhibit 49, Your Honor.

04:49:09   11          THE COURT:  Any objection?

04:49:10   12          MR. TZOVARRAS:  No, Your Honor.

04:49:12   13          THE COURT:  You may proceed.

04:49:12   14          MR. McCORMACK:  The United States of America, by and

04:49:16   15   through its counsel, Thomas E. Delahanty, II, United States

04:49:19   16   Attorney, and Andrew M. McCormack, Assistant United States

04:49:23   17   Attorney, and Defendant Kevin Ross, by and through his counsel

04:49:25   18   Hunter Tzovarras, stipulate and agree that the following facts

04:49:29   19   are true and deemed proved:  The images contained in

04:49:33   20   Government Exhibits 42, 43, 44, 45, 46, 47, and 48 contain

04:49:41   21   visual depictions of actual minors under the age of 18.  These

04:49:45   22   visual depictions had been shipped or transported in

04:49:48   23   interstate or foreign commerce by any means, including by

04:49:51   24   computer.  And this stipulation is signed by the government

04:49:55   25   and Mr. Tzovarras.

G.Add. 002

SCICHILONE - CONTINUED DIRECT EXAMINATION/McCORMACK

179

| 04:49:56 | 1 | Your Honor, the government moves to admit Government |

```
04:49:56   1        Your Honor, the government moves to admit Government
04:49:57   2   Exhibit 49 into evidence.
04:49:58   3              THE COURT:  Any objection?
04:49:59   4              MR. TZOVARRAS:  No, no objection.
04:50:00   5              THE COURT:  It's admitted.
04:50:09   6   BY MR. McCORMACK:
04:50:17   7   Q     You also conducted a forensic examination of the thumb
04:50:20   8   drives in this case; is that right?
04:50:22   9   A     That's correct.
04:50:23  10   Q     So I'd like to show you what's been marked as Government
04:50:26  11   Exhibit 41.  Are you familiar with this exhibit?
04:50:32  12   A     Yes, I am.
04:50:33  13   Q     And how are you familiar with it?
04:50:34  14   A     I created this -- this document to show what files were
04:50:39  15   on this lap -- on this thumb drive.
04:50:42  16              MR. McCORMACK:  Your Honor, the government moves to
04:50:44  17   admit Government Exhibit 41 into evidence.
04:50:46  18              THE COURT:  Any objection, other than the objection
04:50:49  19   previously made?
04:50:50  20              MR. TZOVARRAS:  No, Your Honor.
04:50:51  21              THE COURT:  It's admitted.
04:50:55  22   BY MR. McCORMACK:
04:50:56  23   Q     Mr. Scichilone, what are we looking at here?
04:51:00  24   A     Again, this is information I was able to pull off from
04:51:02  25   the -- one of the thumb drives.  It's called PNY 4 gigabyte
```

G.Add. 003