No. 24-1907

————————————————

In the United States Court of Appeals for the First Circuit

————————————————

**United States,**

*Appellee,*

**v.**

**Kevin Lee Ross,**

*Defendant-Appellant.*

————————————————

**Appeal from the United States District Court for the District of Maine**

————————————————

**Appellant's Reply Brief**

————————————————

William L. Welch, III
5305 Village Center Drive, Suite 142
Columbia, Maryland 21044
Telephone: (410) 615-7186
Facsimile: (410) 630-7760
wlw@wwelchattorney.com
Counsel for Appellant
(Appointed by this Court)

# Table of Contents

Table of Authorities...................................................................v

Glossary of Abbreviations .......................................................vii

Introduction ...............................................................................1

I. Ross' Objection to the Child Pornography Exhibits Informed the District Court When the Government Offered Them that Ross Wanted Them Excluded, Because the Government Had Stipulated that the Exhibits Were Child Pornography, and that They "Could Only Potentially … Inflate Passions and Prejudices." *See* Fed. R. Crim. P. 51, Fed. R. Evid. 103(a)(1). .........3

    A. The District Court's Definitive Rulings to Admit Stipulated Child Pornography Exhibits over Ross' Objection Preserved Ross' Claim that They Should Not Have Been Admitted and Published with Narration. *See* Fed. R. Evid. 103(b)...........................................5

        1. Exhibits 33–35 ruling and publication ...............................6

        2. Exhibits 44–46 ruling and publication ...............................8

        3. Exhibits 50–52 ruling and publication ...............................9

    B. Even if the District Court Were Unaware that Kelly Was Narrating the Publication of the Exhibits that the Court Had Just Admitted over Ross' Objection, this Court May Consider the Error. *See* Fed. R. Crim. P. 52(b), Fed. R. Evid. 103(e)..................10

        1. Error: failure to recognize the parties' actual stipulation, discount the probative value of each narration for what had already been proven, and weigh that against unfair prejudice ...........................................................................11

        2. Clear and obvious..............................................................12

            a. *The record is clear that two days before trial began, the government stipulated that Exhibits 33–35, 44–46 and 50–52 are images of child pornography* ...........................12

b. *The record is clear that two weeks before trial, the government proposed instructing jurors that "…there is no need for evidence apart from the stipulation. You must accept the stipulation…."* ........................................................ 12

c. *The record is clear that the District Court instructed jurors "…there is no need for evidence apart from the stipulation. You must accept the stipulation…."* .................................... 12

d. *The District Court quoted Ross I, when overruling the objection.* ............................................................................. 13

3. The right to a jury trial is substantial .............................. 14

4. Showing stipulated graphic child pornography with narration nine times seriously impaired the fairness, integrity, and public reputation of the proceeding, because it only invited rendering a verdict on an improper emotion basis ..................... 14

II. MISAPPLICATION OF *ROSS I* TO RULE 403 ANALYSIS (*SEE* FED. R. EVID. 403) ...................................................................................... 16

A. When the Government Stipulated that Exhibits 33–35, 44–46, and 50–52 Are Child Pornography, It Conclusively Proved the Only Fact of which the Images Themselves Were Probative ....... 16

1. The images themselves do not indicate anything about where the files were found ................................................................. 18

a. *Types of child pornography irrelevant* .............................. 18

b. *Old Chief* ........................................................................... 18

c. *Cunningham distinguishable* ........................................... 20

d. *Caldwell—similar, but distinguishable* ........................... 20

e. *Inconsistency fallacies* ..................................................... 21

i. *Conceding proof undermines not discounting probative value.* ............................................................................ 21

ii. *Stipulating undermines inadequacy* ............................ 22

  f. *Morales-Aldahondo distinguishable* ................................. 22

 2. Nor do the images themselves indicate anything about Ross' knowledge. ............................................................... 23

  a. *Dudley distinguishable* .................................................... 24

  b. *Eads—similar, but distinguishable* ................................. 25

  c. *Ross I distinguishable* .................................................... 26

B. Misanalysis .................................................................... 28

III. UNFAIR PREJUDICE .................................................................... 29

A. Improper Government Analysis of Whether Error Is Harmless. 29

 1. *Soler-Montalvo* ................................................................ 30

 2. *Rivera-Carrasquillo distinguishable* ............................. 31

B. Overwhelming Untainted Proof Undermines Not Discounting Exhibits 33−35, 44−46 And 50−52 ........................................ 32

C. Proper Method of Analyzing Whether Error Is Harmless ............ 32

Conclusion ........................................................................................ 34

Certificate of Compliance ................................................................ 35

Certificate of Service ........................................................................ 36

# Table of Authorities

## Cases

*Jackson v. Denno,* 378 U.S. 368 (1964) ............................................ 15, 34

*Old Chief v. United States,* 519 U.S. 172 (1997)......................................
.............................................5, 8, 11, 13, 18–21, 23, 24, 26–28, 31, 32, 37

*Puckett v. United States,* 556 U.S. 129 (2009) ....................................... 10

*Sullivan v. Louisiana,* 508 U.S. 275 (1993) .................... 26, 29, 30, 32, 33

*United States v. Bailey,* 121 F.4th 954 (1st Cir. 2024) ........................... 10

*United States v. Caldwell,* 586 F.3d 338 (5th Cir. 2009) .................. 20, 21

*United States v. Correa-Osorio,* 784 F.3d 11 (1st Cir. 2015) ................... 30

*United States v. Cunningham,* 694 F.3d 372 (3rd Cir. 2012) ...... 20, 28, 33

*United States v. Curtin,* 489 F.3d 935 (9th Cir. 2007)............................ 33

*United States v. Dudley,* 804 F.3d 506 (1st Cir. 2015) ........................... 24

*United States v. Eads,* 729 F.3d 769 (7th Cir. 2013) ........................ 25, 26

*United States v. Harden,* 758 F.3d 886 (7th Cir. 2014) .......................... 10

*United States v. Hellman,* 560 F.2d 1235 (5th Cir. 1977)................. 15, 29

*United States v. Kitts,* 27 F.4th 777 (1st Cir. 2022)................................ 10

*United States v. Landrón-Class,* 696 F.3d 62 (1st Cir. 2012)................. 30

*United States v. Loughry,* 660 F.3d 965 (7th Cir. 2011) ........................ 33

*United States v. Morales-Aldahondo,* 524 F.3d 115 (1st Cir. 2008)   22, 23

*United States v. Rivera-Carrasquillo,* 933 F.3d 33 (1st Cir. 2019) ...31, 32

*United States v. Ross,* 837 F.3d 85 (2016)........... 1, 6–8, 11–14, 16, 26–28

*United States v. Soler-Montalvo,* 44 F.4th 1 (1st Cir. 2022) ............. 30, 31

*United States v. Tavares,* 21 F.3d 1 (1st Cir. 1994)................................. 23

*United States v. Varoudakis,* 233 F.3d 113 (1st Cir. 2000) .................... 14

*Yates v. Evatt,* 500 U.S. 391 (1991) ........................................ 26, 29, 32, 33

## Rules

Fed. R. App. P. 28.1(e)(2) ........................................................... 35

Fed. R. App. P. 32(a)(7) ............................................................. 35

Fed. R. App. P. 32(f) .................................................................. 35

Fed. R. Crim. P. 51 ................................................................... 3, 6

Fed. R. Crim. P. 52(b) ................................................................ 10

Fed. R. Evid. 103(a)(1) ............................................................. 3, 6

Fed. R. Evid. 103(b) ..................................................................... 5

Fed. R. Evid. 103(e) .................................................................... 10

Fed. R. Evid. 403 ...................... 7, 13, 16, 18–22, 24, 25, 27, 28, 30–32, 34

## Constitutional Provisions

U.S. Const. amend. V ................................................................. 14

U.S. Const. amend. VI ................................................................ 14

U.S. Const. amend. XIV ............................................................. 14

## Other Authorities

*Pattern Jury Instructions for the District Courts of the First Circuit,*
District of Maine, Section 2.01, Internet Site Edition (2/6/24) .......... 4, 5

# Glossary of Abbreviations

A.          Addendum

Aee.Br.     Appellee's Brief

Doc.        Document in Case Management/Electronic Case Filing
            system

J.A.        Joint Appendix

## Introduction

Kevin Ross was denied a fair trial, because when he objected to nine exhibits, the District Court misapplied *Ross I* and Rule 403, treating *the parties' actual stipulation* that the Exhibits are child pornography like it was only a defendant's offer to stipulate in order to force substitution of an admission for the government's chosen evidence. The District Court should have considered the exhibits' discounted probative value after stipulation and weighed that against the risk that graphic images of sexual child abuse unfairly prejudiced Ross.

The government has raised preservation, compliance, and harmless error. Claiming that Ross misremembers, the government cites a transcript that is not part of the record in this case. However, *Ross I* did not involve whether showing exhibits with narration to prove what the government had stipulated to be conclusively proven was unfairly prejudicial. Instead, in *Ross I* the Court decided whether Ross waived denial of a motion in limine and whether probative value of evidence decreases when a defendant is *"willing to stipulate"* to it. The government's citation of a transcript excerpt from another case (Aee.Br.34 *citing* G.Add.002) misdirects, because the effect of an actual

1

stipulation on probative value of other evidence was neither raised, nor decided in *Ross I*. Perhaps it should have been, but failure to do so in *Ross I* does not bar raising it in this case.

The government contradicts its response that it had to show the stipulated child pornography to the jury because the stipulation it made was inadequate, with its response that allowing it to do so was immaterial because other evidence was overwhelming. The government also seems to advocate for an overwhelming untainted evidence test for harmless error instead of the contribution analysis that *Sullivan v. Louisiana* establishes.

Ross maintains that showing graphic child sexual abuse with narration nine times violated Rule 403, unfairly prejudicing him by inflaming jurors' passions and distracting them from: "the question really is, did the defendant knowingly possess this material?" The District Court abused its discretion by not considering the discounting effect of *the actual stipulation* on the probative value of each of the nine exhibits and not weighing that against the unfair prejudice to Ross.

I. Ross' Objection to the Child Pornography Exhibits Informed the District Court When the Government Offered Them that Ross Wanted Them Excluded, Because the Government Had Stipulated that the Exhibits Were Child Pornography, and that They "Could Only Potentially … Inflate Passions and Prejudices." *See* Fed. R. Crim. P. 51, Fed. R. Evid. 103(a)(1).

When the government moved to admit Exhibits 33–35, the District Court asked, "Any objection[,]" and Ross responded, "We stipulated that they are child pornography, your Honor, so we object to them being shown. … [S]howing it to the jury could only potentially, I guess, inflate passions and prejudices." A.17:13–17, 18:7–9.

When the government moved to admit Exhibits 44–46, Ross protested, "Same objection as yesterday." A.24:8.

When the government moved to admit Exhibits 50–52, Ross protested, "Same objection, your Honor." A.25:7.

> The government read to the jury Stipulation #1 that Government's Exhibits 33 through 35, 44 through 46, and 50 through 52 are images produced by using an actual person under the age of 18 engaging in sexually explicit conduct. These images of child pornography were produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce.

J.A.316:23−317:13.  Then, the government introduced Stipulation #1 as Exhibit 57, and it was admitted.  J.A.317:16−19.

In addition, the government proposed Jury Instruction No. 8, which reads,

### Stipulations

The evidence in this case includes facts to which the lawyers have agreed or stipulated.  A stipulation means simply that the government and the defendant accept the truth of a particular proposition or fact.  Since there is no disagreement, there is no need for evidence apart from the stipulation.  You must accept the stipulation as fact to be given whatever weight you choose[.]

J.A.8 (Doc. 66), 411.  *See Pattern Jury Instructions for the District Courts of the First Circuit*, District of Maine, Section 2.01, Internet Site Edition (2/6/24).

No one objected to the stipulation instruction at the charge conference.  J.A.334:17−335:17.  The District Court instructed the jury,

A stipulation means simply that the government and the defendant accept the truth of a particular proposition or fact. Since there is no disagreement, there is no need for evidence apart from the stipulation.  You must accept the stipulation as fact to be given whatever weight you choose.

(J.A. 382:17−23), gave them a copy of the stipulation instruction, and referred to it again when the District Court instructed the jury about the second element.  J.A.342:10−343:4, 375:20−21.

In addition to the instruction stating "there is no need for evidence apart from the stipulation.  You must accept the stipulation as fact…" (J.A.8 (Doc. 66), J.A.411, J.A. 382:17−23; *Pattern Jury Instructions for the District Courts of the First Circuit*, District of Maine, Section 2.01), the stipulation is conclusive evidence of the element.  *See Old Chief v. United States,* 519 U.S. 172, 186 (1997).  Although the government is not required to stipulate (*Id*. at 183, 186−187), in this case it did.

A. The District Court's Definitive Rulings to Admit Stipulated Child Pornography Exhibits over Ross' Objection Preserved Ross' Claim that They Should Not Have Been Admitted and Published with Narration.  *See* Fed. R. Evid. 103(b).

Kelly's narration of the same exhibits does not require separate objection, because in context Kelly's narration is part and parcel of showing the exhibits and immediately followed the district court's ruling to admit them over Ross' objection.  *See id.*

In addition, the context for excluding Kelly's narration is the same as excluding the Exhibits themselves.  *See id.*  The government

stipulated that the Exhibits are child pornography, and Kelly's narration included that he chose the Exhibits, because they were child pornography. J.A.279:6−8, 310:1−4, 314:18−20, 315:1−3. Like the Exhibits, Kelly's graphic narration of them "could only potentially … inflate passions and prejudices." *See* Fed. R. Crim. P. 51, Fed. R. Evid. 103(a)(1).

### 1. Exhibits 33−35 ruling and publication

The District Court overruled Ross' objection, saying

Okay. So, uncharacteristically helpful, the First Circuit has ruled on this particular issue in a case by the name of Kevin Lee Ross—*United States versus Kevin Lee Ross* in which it has said that: a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it, so long as it meets basic relevance and is (*sic*) unfairly prejudicial. Okay. Overruled.

A.18:10−17; J.A.278: 10−17; *see United States v. Ross,* 837 F.3d 85 (2016) (*Ross I*).

During publication for the jury, Kelly narrated that Exhibit 33 is an image of a small female child, probably under five years of age, lying

6

on her back completely naked with what appears to be ejaculate on her torso, an adult's hand, and the erect penis of an adult male. J.A.278:23−279:5.

During publication for the jury, Kelly narrated that Exhibit 34 is a GIF image of a prepubescent female child, forced to perform oral sex on an adult male until he ejaculates into her mouth. J.A.279:9−14.

During publication for the jury, Kelly narrated that Exhibit 35 is sexual abuse video of a prepubescent female child, probably no more than five years of age, forced to perform oral sex on an adult male. J.A.279:23−280:12.

At the beginning of the following day, the District Court elaborated on its decision to overrule Ross' objection to Exhibits 33−35. A.19:15−23:17. The District Court noted the parties had stipulated Exhibits 33−35, 44−46 and 50−52 are images produced by using an actual person under the age of 18 engaging in sexually explicit conduct and Ross' objection that they are unfairly prejudicial under Rule 403. A.19:21−20:4; *see* Fed. R. Evid. 403. Again the District Court cited *Ross I,* but did not recognize that the stipulation has a discounting effect on the probative value of the Exhibits, did not consider the discounted

probative value of each of the Exhibits, and did not weigh it against the Exhibits' unfair prejudice to Ross.  A.20:9–16.  The District Court mischaracterized Ross' *objections based on stipulation* as being the same as in *Ross I,* which instead involved *"willingness to stipulate,"* and misapplied the general rule that defendants may not propose to stipulate their way out of the out of the full evidentiary force of the case as the government chooses to present it.  A.20:16–23:13.  *See Old Chief* and *Ross I, supra.*

### 2.  Exhibits 44–46 ruling and publication

The District Court overruled Ross' objection saying, "Thank you. Same ruling; they're admitted."  A.24:9–10; J.A.310: 9–10.

During publication for the jury, Kelly narrated Exhibit 44 is an image found on the laptop of a prepubescent girl, naked, lying on her back with her legs spread, her vulva clearly visible, with the erect penis of an adult male in the foreground.  J.A.310:16–25.

During publication for the jury, Kelly narrated Exhibit 45 is an image found on the laptop of a prepubescent girl, standing up naked

with stockings on and nothing else, and there appears to be an adult female spreading the child's vulva.  J.A.311:1−9.

During publication for the jury, Kelly narrated Exhibit 46 is a video taken from the laptop of an adult male attempting to force his erect penis into a prepubescent child.  J.A.311:12−20.

### 3.  Exhibits 50−52 ruling and publication

The District Court overruled Ross' objection saying, "Thank you. Same ruling; they're admitted."  A.25:8−9; J.A.315: 8−9.

During publication for the jury, Kelly narrated Exhibit 50 is an image of a prepubescent girl forced to perform oral sex on an adult male.  J.A.315:14−18.

During publication for the jury, Kelly narrated Exhibit 51 is an image of a prepubescent girl who still appears to be in a car seat with an adult male ejaculating on her face.  J.A.315:19−23.

During publication for the jury, Kelly narrated Exhibit 52 is a video of a very young girl, probably approximately 5 years of age or under, forced to perform oral sex on an adult male, titled PTHC Kitty 4YO3, meaning preteen/hardcore 4 years old.  J.A.316:6−22.

B. Even if the District Court Were Unaware that Kelly Was Narrating the Publication of the Exhibits that the Court Had Just Admitted over Ross' Objection, this Court May Consider the Error. *See* Fed. R. Crim. P. 52(b), Fed. R. Evid. 103(e).

The Court may exercise jurisdiction to review even a waived issue. *Id.* The record does not reflect intentional abandonment of Ross' right to challenge Kelly's narration of the showing, while challenging the showing itself, of which Kelly's narration is part and parcel. *See e.g., United States v. Harden,* 758 F.3d 886, 889–90 (7th Cir. 2014)(forfeiture is mere failure to act at trial instead of intentional relinquishment of right to challenge error).

The Court uses a four-part plain error test: (1) an error occurred; (2) which was clear or obvious; (3) which affected defendant's substantial rights; and (4) which seriously affected the fairness, integrity or public reputation of the proceedings. *United States v. Bailey,* 121 F.4th 954 (1st Cir. 2024) *citing United States v. Kitts,* 27 F.4th 777, 784 (1st Cir. 2022) *quoting Puckett v. United States,* 556 U.S. 129, 135 (2009).

1. Error: failure to recognize the parties' actual stipulation, discount the probative value of each narration for what had already been proven, and weigh that against unfair prejudice

When overruling Ross' objection, the District Court cited *Ross I* saying,

> …a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it, so long as it meets basic relevance and is (*sic*) unfairly prejudicial.

A.18:13−16.

However, *Ross I* involved: i) whether it was error to deny a pretrial Motion in Limine, seeking exclusion of child pornography images without viewing them; and ii) whether it was error to admit the images based on the risk of unfairly prejudicing the jury, because Ross' *willingness to stipulate* that the images were child pornography rendered their probative value minimal. In *Ross I*, the Court held that the first issue had been waived and that it was not an abuse of discretion to admit the images, because "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Id.* at 89−90 *quoting Old Chief* at 186−87.

The issues presented and decided in *Ross I* neither involved *the effect of an actual mutual stipulation,* nor the one appended to the government's response.  G.Add.002.

## 2.  Clear and obvious

a.  *The record is clear that two days before trial began, the government stipulated that Exhibits 33–35, 44–46 and 50–52 are images of child pornography.*

On 06/11/2024, the government filed Stipulation #1 (*supra* at 3).  A.11, J.A.10 (Doc. 87).

b.  *The record is clear that two weeks before trial, the government proposed instructing jurors that "…there is no need for evidence apart from the stipulation.  You must accept the stipulation…."*

On 05/28/2024, the government had proposed jury instruction number 8 (*supra* at 4).  J.A.8, 411.

c.  *The record is clear that the District Court instructed jurors "…there is no need for evidence apart from the stipulation. You must accept the stipulation…."*

No one objected to the stipulation instruction at the charge conference.  J.A.334:17–335:17.  The District Court read it (*supra* at 5) to the jury (J.A. 382:17–23), gave them a copy of it, and referred to it

again when the District Court instructed the jury about the second element.  J.A.342:10−343:4, 375:20−21.

> d. *The District Court quoted Ross I, when overruling the objection.*

The text of the Opinion makes the facts, issues, and decision in that case obvious.  *Id.*  Denial of the pretrial Motion in Limine, seeking exclusion of child pornography images without viewing them was waived; and *willingness to stipulate* that images were child pornography does not render their probative value minimal, because the government may choose how to present its case.  *Ross I* at 89−90.  That is obviously not the same as failure to: i) recognize the parties' actual stipulation, ii) discount the effect on probative value of each narration for what had already been proven, and iii) weigh that against unfair prejudice.

Although the government is not required to stipulate (*Old Chief* at 183, 186−187), in this case it did.  The District Court failed to recognize the parties' actual stipulation or the process for Rule 403 analysis prescribed in *Old Chief (supra),* when deciding whether the risk of unfair prejudice outweighed the probative value of the Exhibits.

Contrary to the government's claim (Aee.Br.34), the issues presented and decided in *Ross I* neither involved *an actual stipulation,* nor the one appended to the government's response.

   3.   The right to a jury trial is substantial.

The Sixth Amendment guarantees the right to trial "by an impartial jury...." U.S. Const. amend. VI.  In addition, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and perhaps the Due Process Clause of the Fifth Amendment, guarantee the right.  U.S. Const. amend. V, XIV.

Unfair prejudice can result from evidence that "invites the jury to render a verdict on an improper emotional basis."  *United States v. Varoudakis,* 233 F.3d 113, 122 (1st Cir. 2000).

   4.   Showing stipulated graphic child pornography with narration nine times seriously impaired the fairness, integrity, and public reputation of the proceeding, because it only invited rendering a verdict on an improper emotion basis.

The government said, "So the question really is, did the defendant knowingly possess this material?"  J.A.345:17−18.  Exhibits 33−35, 44−46 and 50−52 are digital files depicting child pornography.  The Exhibits are probative of whether the files contain child pornography.

However, the contents neither make it more nor less likely that Ross knew that they were among thousands of other files on the phone, laptop, and hard drive. Unlike other files that Kelly found, Exhibits 33–35, 44–46 and 50–52 do not reflect Ross' image or voice.

Showing them to the jury with Kelly's narration "could only potentially … inflate passions and prejudices[,]" (A.17:13–17, 18:7–9), because a jury may not reject a stipulated fact. *United States v. Hellman*, 560 F.2d 1235 (5th Cir. 1977).

No one can say that showing stipulated graphic child pornography with narration nine times did not affect the verdict. It is too much to expect jurors to remain uninfluenced by evidence they receive even if they are instructed to use it for only a limited purpose and to disregard it for other purposes. *See e.g., Jackson v. Denno,* 378 U.S. 368 (1964)(defendant denied due process, if convicted by jury instructed to first determine voluntariness of confession and then disregard it if it is found to be inadmissible).

## II. Misapplication of *Ross I* to Rule 403 Analysis (*See* Fed. R. Evid. 403)

*Ross I* did not involve either whether an actual stipulation or whether the one appended to the government's response in this case (G.Add.002) affected probative value. Instead, *Ross I* involved: i) waiver of error in denying the pretrial Motion in Limine without viewing the images it sought to exclude; and ii) *willingness to stipulate* that images were child pornography not rendering their probative value minimal, because the government may choose how to present its case. *Id.* at 89−90.

### A. When the Government Stipulated that Exhibits 33−35, 44−46, and 50−52 Are Child Pornography, It Conclusively Proved the Only Fact of Which the Images Themselves Were Probative.

The Exhibits themselves are:

i)     an image of a small female child, probably under five years of age, lying on her back completely naked with what appears to be ejaculate on her torso, an adult's hand, and the erect penis of an adult male (Exhibit 33, J.A.278:23−279:5);

ii)   an image of a prepubescent female child, forced to perform oral sex on an adult male until he ejaculates into her mouth (Exhibit 34, J.A.279:9−14);

iii)  a sexual abuse video of a prepubescent female child, probably no more than five years of age, forced to perform oral sex on an adult male (Exhibit 35, J.A.279:23−280:12);

iv)   an image of a prepubescent girl, naked, lying on her back with her legs spread, her vulva clearly visible, with the erect penis of an adult male in the foreground (Exhibit 44, J.A.310:16−25);

v)    an image of a prepubescent girl, standing up naked with stockings on and nothing else, and there appears to be an adult female spreading the child's vulva (Exhibit 45, J.A.311:1−9);

vi)   a video of an adult male attempting to force his erect penis into a prepubescent child (Exhibit 46, J.A.311:12−20);

vii)  an image of a prepubescent girl forced to perform oral sex on an adult male (Exhibit 50, J.A.315:14−18);

viii)  an image of a prepubescent girl who still appears to be in a car seat with an adult male ejaculating on her face (Exhibit 51,  J.A.315:19−23); and

ix)  a video of a very young girl, approximately 5 years of age or under, forced to perform oral sex on an adult male (Exhibit 52, J.A.316:6−22).

1.  The images themselves do not indicate anything about where the files were found.

Kelly testified where he found stipulated child pornography and specifically Exhibits 33−35, 44−46, and 50−52.  J.A.221:13−226:17, 277:6−12, 309:20−25, A.25:1−5.

a.  *Types of child pornography irrelevant*

The Indictment does not allege a type of child pornography. J.A.17−18.  Nor was jury asked to decide the type.  J.A.400.

b.  *Old Chief*

*Old Chief* involved the scope of a trial court's discretion, when a defendant offers to stipulate, seeking to force substitution of an admission for the prosecution's chosen narrative.  519 U.S. 172, 180, 192.  *Old Chief* prescribes the process for Rule 403 analysis:

i) does evidence risk unfair prejudice;

ii) if so, evaluate the degrees of probative value and unfair prejudice for the evidence in question and for any actually available substitutes;

iii) if an alternative has substantially the same or greater probative value and a lower risk of unfair prejudice, sound judicial discretion discounts the value of the offered evidence; and

iv) sound judicial discretion excludes it if the risk of unfair prejudice outweighs its discounted probative value.

*Id.* at 182–83; *see* Fed. R. Evid. 403. Trial courts have to appreciate *the refusing party's* need for evidentiary richness and narrative integrity in presenting a case when make these calculations (*Id.* at 183), but in this case the government stipulated.

Although the prosecutor's choice of evidence will generally survive Rule 403 analysis when a defendant *"seeks to force"* substitution of an admission, a court abuses discretion when it refuses an offer of conclusive proof of an element without discounting the probative value of other evidence of the same in its Rule 403 analysis. *Id.* at 191–92.

If refusing a defendant's forced substitution of an admission without discounting probative value of other evidence is an abuse of discretion, then not discounting the probative value of other evidence, when the government has stipulated must abuse discretion too.

### c.  *Cunningham distinguishable*

*United States v. Cunningham* involved the District Court's failure to examine all the challenged evidence, not whether stipulated alternative evidence had similar or greater probative value and a lower danger of unfair prejudice, which would discount the probative value of the offered evidence in the Rule 403 analysis.  694 F.3d 372, 389 (3d Cir. 2012).

### d.  *Caldwell—similar, but distinguishable*

*United States v. Caldwell* involved a stipulation that videos of minors engaged in sexually explicit conduct were found on Caldwell's computer.  586 F.3d 338, 342 (5th Cir. 2009).  Caldwell challenged the trial court's failure to conduct a Rule 403 weighing test.  However, the Fifth Circuit neither addressed the lack of weighing by the District Court, nor application of the proper weighing process prescribed in *Old Chief (supra),* nor that stipulation concedes conclusive proof,

undermining the assertion that the probative value of the offered evidence is unaffected, unlike when the government refuses. *See Caldwell* at 342−43. Instead, the Fifth Circuit skipped application of the process, emphasized benefits to the prosecution's case of presenting the offered evidence, and concluded discretion was not abused. *Id.*

    e. *Inconsistency fallacies*

When parties stipulate to proof is different from when the government refuses and a defendant seeks to force substitution of an admission. Although the process of Rule 403 analysis would be as prescribed in *Old Chief (supra),* when the government stipulates, appreciation of *the refusing party's* need for evidentiary richness and narrative integrity in presenting a case would not apply to what has been stipulated. *See* Fed. R. Evid. 403.

    i. *Conceding proof undermines not discounting probative value.*

When the government stipulates, it concedes conclusive proof, unlike when it refuses, asserting the right to present its case as it chooses *(see Old Chief, supra).* The government's stipulation (*supra* at 3,), filing it on the docket (A.11, J.A.10 (Doc. 87)), reading it to the jury

(J.A.316:23−317:13), introducing it (Exhibit 57, J.A.317:16−19), and proposing the instruction on it (number 8, *supra* at 4, J.A.8 (Doc. 66), 411), undermines the assertion that probative value would be unaffected in the Rule 403 analysis. *See* Fed. R. Evid. 403.

### ii. *Stipulating undermines inadequacy.*

If the joint stipulation were inadequate, then the government would not have made it, filed it, read it to the jury, introduced it, and proposed instruction on it. A.11, J.A.10 (Doc. 87), J.A.316:23−317:13, J.A.317:16−19 (Exhibit 57), J.A.8 (Doc. 66) 411.

### f. *Morales-Aldahondo distinguishable*

*United States v. Morales-Aldahondo* involved an offer to stipulate, seeking to force substitution of an admission for the prosecution's chosen narrative, not stipulation by the government. 524 F.3d 115, 118 (1st Cir. 2008). *Morales-Aldahondo* does not discuss whether alternative evidence had similar or greater probative value and a lower danger of unfair prejudice, which would discount the probative value of the offered evidence in the Rule 403 analysis. Nor does *Morales-Aldahondo* discuss that when the government stipulates, conceding conclusive proof undermines the assertion that the probative value of the offered

evidence is unaffected, unlike when it refuses, asserting the right to present its case as it chooses *(see Old Chief, supra).*

While the government does not have to accept an offer to stipulate *(Morales-Aldahondo* at 120 *quoting United States v. Tavares*, 21 F.3d 1, 3 (1st Cir. 1994)), in this case the government stipulated, filed the stipulation, read it to the jury, introduced it, and proposed instruction on it.  A.11, J.A.10 (Doc. 87), J.A.316:23−317:13, J.A.317:16−19 (Exhibit 57), J.A.8 (Doc. 66) 411.

> 2. Nor do the images themselves indicate anything about Ross'
> knowledge.

Exhibits 33−35, 44−46 and 50−52 do not reflect Ross' appearance or voice.  Nor has the government ever asserted they do.  Kelly's testimony about file dates coinciding with times when Ross was not incarcerated did not require Exhibits 33−35, 44−46 and 50−52 with narration.  Kelly's testimony about when Ross was incarcerated and the spreadsheets showing filenames and dates (Exhibits 16−27, 36−43, and 47−49) are more probative of who accessed the files with knowledge.

The government presented Scott's testimony for the jury to assess his credibility about whether he might have framed Ross.

J.A.124:4−193:22.

    a. *Dudley distinguishable*

*United States v. Dudley* involved an offer to stipulate, seeking to force substitution of an admission for the prosecution's chosen narrative, not stipulation by the government.  804 F.3d 506 (1st Cir. 2015).  *Dudley* does not discuss whether alternative evidence had similar or greater probative value and a lower danger of unfair prejudice, which would discount the probative value of the offered evidence in the Rule 403 analysis.  Nor does *Dudley* discuss that when the government stipulates, conceding conclusive proof undermines the assertion that the probative value of the offered evidence is unaffected, unlike when it refuses, asserting the right to present its case as it chooses *(see Old Chief, supra)*.

    While the government does not have to accept an offer to stipulate (*Dudley* at 516), in this case the government did.  A.11, J.A.10 (Doc. 87), J.A.316:23−317:13, J.A.317:16−19 (Exhibit 57), J.A.8 (Doc. 66) 411.

    Ross' defense was that Scott framed him, and the government presented Scott's testimony for the jury to assess his credibility.

J.A.124:4–193:22.

Exhibits 33–35, 44–46 and 50–52 do not reflect Ross' appearance or voice. Nor has the government ever asserted they do. Kelly's testimony about when Ross was incarcerated and the spreadsheets showing filenames and dates (Exhibits 16–27, 36–43, and 47–49) are more probative of who accessed the files with knowledge.

### b. *Eads—similar, but distinguishable*

In *United States v. Eads,* the parties stipulated that visual depictions involved people under the age of 18, engaging in sexually explicit conduct. 729 F.3d 769, 778 (7th Cir. 2013). However, when the trial court overruled Eads' first Rule 403 objection, it pointed out that the stipulation was not in evidence. *Id.* at 774. It is unclear whether the stipulation was entered when Eads' later Rule 403 objection was overruled, because *Eads* does not address that. Eads challenged the trial court's insufficient explanation of how it balanced the Rule 403 factors. *Eads, supra.* The Seventh Circuit held: i) the record was inconclusive about whether the trial court had reviewed the contested evidence, ii) the trial court's explanation for admitting contested evidence was insufficient, and iii) did not decide whether doing so was

error.  *Id.* at 776–78.  Citing other untainted evidence of Eads' guilt, the Seventh Circuit concluded that admitting the contested was harmless. *Id.*

The Seventh Circuit neither addressed application of the proper weighing process prescribed in *Old Chief (supra),* nor that when the government stipulates, conceding conclusive proof undermines the assertion that the probative value of the offered evidence is unaffected, unlike when it refuses, asserting the right to present its case as it chooses *(see Old Chief, supra).  Eads, supra.*  Also, the harmlessness analysis in *Eads* is flawed.  The Seventh Circuit applied an overwhelming untainted evidence test for harmless error (*Id.* at 778–79) instead of the contribution analysis that *Sullivan v. Louisiana* establishes.  *See* 508 U.S. 275, 279 (1993) *quoting Yates v. Evatt,* 500 U.S. 391, 404 (1991)(harmless-error examines "basis on which 'the jury actually rested its verdict[,]' not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered[.]").

c.  *Ross I distinguishable*

*Ross I* involved whether Ross waived denial of a motion in limine and whether probative value of evidence decreases when a defendant is

*"willing to stipulate"* to it, not whether showing exhibits with narration to prove what *the government had stipulated to be proven* was unfairly prejudicial.

*Ross I* does not discuss whether alternative evidence had similar or greater probative value and a lower danger of unfair prejudice, which would discount the probative value of the offered evidence in the Rule 403 analysis. Nor does *Ross I* discuss that when the government stipulates, conceding conclusive proof undermines the assertion that the probative value of the offered evidence is unaffected, unlike when it refuses, asserting the right to present its case as it chooses *(see Old Chief, supra)*.

Scott's testimony is more probative of whether he framed Ross' than Exhibits 33–35, 44–46 and 50–52 themselves, and the government presented Scott's testimony. J.A.124:4–193:22.

Likewise, Kelly's testimony about when Ross was incarcerated and the spreadsheets showing filenames and dates (Exhibits 16–27, 36–43, and 47–49) is more probative of who accessed the files with knowledge than Exhibits 33–35, 44–46 and 50–52, which do not reflect

Ross' appearance or voice.  Nor has the government ever asserted they do.

B.  Misanalysis

When the District Court overruled Ross' Rule 403 objection to Exhibits 33–35 (*see* Fed. R. Evid. 403), it treated the parties' stipulation as if the defendant were seeking to force substitution of an admission, citing *Ross I* as deciding the same issue when the issues are different. Even after acknowledging the parties' stipulation the next day, the District Court did not evaluate the degrees of probative value and unfair prejudice for each of Exhibits 33–35, 44–46, and 50–52 and for the stipulation made by the government.  *See Old Chief* at 182–83.  Nor did the District Court discount the probative value of Exhibits 33–35, 44–46, and 50–52, considering the stipulation.  *See Old Chief* at 182–83.  Instead, District Court cited *Ross I* and *Cunningham (supra)* as deciding the same issue when the issues are different, and concluded that the Exhibits remain relevant.  A.18:10–17, 24:9–10, 25:8–9.

III. UNFAIR PREJUDICE

Showing stipulated child pornography to the jury with Kelly's narration only "could only potentially … inflate passions and prejudices[]" (A.17:13−17, 18:7−9), because a jury may not reject a stipulated fact. *Hellman, supra.*

While Kelly's expertise about retrieval and analysis of data from the digital devices was appropriate, his narration about Exhibits 33−35, 44−46 and 50−52 amplified the unfair prejudice to Ross, because the graphic images of sexual child abuse did not need any analysis or explanation to understand, and the District Court instructed the jury that "[a]n expert witness has special knowledge or experience that allows the witness to give an opinion." J.A.382:25−383:1

A. Improper Government Analysis of Whether Error Is Harmless

The government hypothesizes that in a trial without error it presented overwhelming proof of guilt. Aee.Br.36. However, harmless-error review examines "the basis on which 'the jury actually rested its verdict[,]' not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered[.]" *Sullivan* at 279 *quoting Yates* at 404. While overwhelming untainted evidence may

factor in contribution analysis, the overwhelming evidence test would contravene *Sullivan, supra.*

### 1. *Soler-Montalvo*

*United States v. Soler-Montalvo* involved insufficiency of the evidence, limiting the testimony of Soler-Montalvo's expert witness, and prosecutorial misconduct, not whether showing exhibits with narration to prove what *the government had stipulated to be proven* was unfairly prejudicial.  44 F.4th 1, 5 (1st Cir. 2022).  The trial court excluded the expert's not-a-typical-predator testimony without citing Rule 403, because confusion substantially outweighed any probative value.  *Soler-Montalvo* at 15.

Although non-constitutional errors admitting or excluding evidence can be harmless, they are not when they "likely affected" the out-come.  *Id.* at 19 *quoting United States v. Correa-Osorio,* 784 F.3d 11, 25 (1st Cir. 2015) and *United States v. Landrón-Class,* 696 F.3d 62, 71 (1st Cir. 2012).

The Court reversed Soler-Montalvo's conviction, because the Court could not say with fair assurance after considering all that happened

that the error did not sway the verdict. *Soler-Montalvo* at 20. In addition, the Court used contribution analysis instead of the overwhelming test. *Id.*

### 2. *Rivera-Carrasquillo distinguishable*

*United States v. Rivera-Carrasquillo, et al.* involved *inter alia* a Rule 403 challenge to admission of autopsy, crime-scene, and gun photos in a violent crimes in aid of racketeering case, not whether showing exhibits with narration to prove what the government stipulated was conclusively proven was unfairly prejudicial. 933 F.3d 33 (1st Cir. 2019); *see* Fed. R. Evid. 403. *Rivera-Carrasquillo* does not mention whether defendants sought to force substitution of an admission or whether there was stipulation. Nor does *Rivera-Carrasquillo* address lack of weighing by the District Court or application of the proper weighing process prescribed in *Old Chief (supra)*.

Error was assumed without analysis. *Rivera-Carrasquillo* at 46. However, the overwhelming untainted evidence test seems to have been applied. *Id.* at 46–47. Although the contribution standard for analyzing harmless error is cited, and contribution/impact terms are

used, *Rivera-Carrasquillo* only recites untainted evidence before concluding harmless error. It does not address whether the erroneously admitted crime scene and gun photos were part of "the basis on which 'the jury actually rested its verdict[.]'" *See Sullivan* at 279 *quoting Yates* at 404. Although the autopsy photographs were also challenged, the conclusion only mentions the crime scene and gun photos. *Rivera-Carrasquillo* at 47.

## B. Overwhelming Untainted Proof Undermines Not Discounting Exhibits 33−35, 44−46 and 50−52.

Probation officers, Ross' brothers, and Kelly testified about whether Ross knowingly possessed the three devices. Aee.Br.36−37. Kelly also testified about whether Ross knew the devices contained at least one image of child pornography, and the government presented Ross' prior conviction. Aee.Br.37−38.

Arguing the overwhelming nature of other untainted evidence implicitly concedes that the probative value of Exhibits 33−35, 44−46 and 50−52 should have been discounted in the Rule 403 analysis. *See* Fed. R. Evid. 403; *Old Chief* at 182−83.

## C. Proper Method of Analyzing Whether Error Is Harmless

Harmless-error review examines "the basis on which 'the jury actually rested its verdict[,]' not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered[.]" *Sullivan* at 279 *quoting Yates* at 404.

All depictions of adults engaging in sex with children are repulsive. *Cunningham* at 390. Video can be particularly disturbing and "generate even more intense disgust[.]" *Id. quoting United States v. Curtin,* 489 F.3d 935, 964 (9th Cir. 2007)(*en banc*)(Kleinfeld, J., concurring). Video of men raping prepubescent girls has "a strong tendency to produce intense disgust." *United States v. Loughry,* 660 F.3d 965, 974 (7th Cir. 2011).

The District Court should have: i) recognized *the parties' actual stipulation,* ii) discounted the probative value for each of the Exhibits, and iii) weighed each Exhibit's discounted probative value against the risk of unfairly prejudicing Ross.

No one can say that showing stipulated graphic child pornography with narration nine times did not affect the verdict, because child pornography evidence risks overwhelming prejudice. *Cunningham, Curtin,* and *Loughry, supra.* It is too much to expect jurors to remain

uninfluenced by evidence they receive even if they are instructed to use it for only a limited purpose and to disregard it for other purposes. *Jackson, supra.*

## Conclusion

The Court should address proper Rule 403 analysis, apply it, considering the basis on which the jury actually rested its verdict, vacate Ross' conviction and sentence, and remand for a new trial.

/s/ *William L. Welch,* III

William L. Welch, III
wlw@wwelchattorney.com
5305 Village Center Drive, Suite 142
Columbia, Maryland 21044
Telephone: (410) 615-7186
Facsimile: (410) 630-7760
Counsel for Kevin Lee Ross
  (Appointed by this Court)

## Certificate of Compliance

I certify this Reply Brief complies with type volume limits, because excluding the parts of the document exempted by Rule, it contains approximately 5,888 words. *See* Fed. R. App. P. 32(f).

This Brief complies with the typeface and type style requirements because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font. *See* Fed. R. App. P. 32(a)(7), 28.1(e)(2).

/s/ *William L. Welch,* III

_____

William L. Welch, III

## Certificate of Service

I certify on this 28th day of May 2025 the required copies of the foregoing Appellant's Reply Brief were filed with the Clerk of the United States Court of Appeals for the First Circuit and a copy was delivered electronically to Lindsay Feinberg (LFeinberg@usa.doj.gov), Nicholas S. Heimbach (nicholas.heimbach@usdoj.gov), Office of the United States Attorney, 100 Middle Street, East Tower, 6th Floor, Portland, Maine 04101-4100, and Andrew McCormack (andrew.mccormack@usdoj.gov), Office of the United States Attorney, 202 Harlow Street, Suite 111, Bangor, Maine 04401-4901.

/s/ *William L. Welch,* III

William L. Welch, III